## THE MAYOR, &c. OF BALTIMORE, vs. HOWARD.

APPEAL from *Baltimore* county court. *Assumpsit* to recover a sum of money due for paving taxes imposed by the plaintiffs, (the appellants,) on the defendant, (the appellee.) Plea *non assumpsit*. At the trial, the plaintiffs gave in evidence an act of the general assembly, passed at November session 1796, *ch.* 68, entitled, "An act to erect *Baltimore* town, in *Baltimore* county, into a city, and to incorporate the inhabitants thereof." They also gave in evidence, another act of the general assembly, passed at November session 1797, *ch.* 54, entitled, "A supplement to the act, entitled, An act to erect *Baltimore* town, in *Baltimore* county, into a city, and to incorporate the inhabitants thereof." They further gave in evidence, an ordinance of the mayor and city council of *Baltimore*, approved March 9th, 1807, entitled, "An ordinance to appoint city commissioners, and prescribing their duties." And also gave in evidence, the following notice, signed by *Stouffer*, *Hynson* and *Martin*, the city commissioners and commissioners of health, on the 1st of April, 1817. "Notice is hereby given, that the office of the city commissioners and the commissioners of health is kept in the chamber of the Port Wardens, over the mayor's office, where the board will sit every Monday morning, at 9 o'clock, for the purpose of communicating and receiving information and applications from the citizens relative to the duties required of them by the ordinances of the city corporation, and for the accommodation of the public. *Samuel Young*, their clerk, will attend at the office daily, from the hours of 9 o'clock, A. M. to 1 P. M. and from 3 o'clock, P. M. to 5, except when engaged with the board on out door duties, and in that case, the orders and applications are requested

The possession of a power by a corporation to do an act, is of itself the possession of the right to provide for the doing of that act by agents. But the giving a power to a corporation, and the giving authority to provide for the exercise of a power, are different—the authority to provide for the exercise of a power not being the possession of the power itself, but a right only to confer it, or to authorise the exercise of it by others.

All statutes made in *pari materia* are to be taken and construed together, as if they were one system, and that though not expressly referring to each other, and even after one has expired or been repealed.

Where an act of assembly authorises the collection of taxes imposed by such act, by distress or action of debt, or where an act authorises the tax, but gives no remedy, in either case an action of *assumpsit* will lie, on the principle that where the law gives a claim to one against another, it raises an implied *assumpsit* on the legal obligation to pay.

The giving a remedy by distress or action of debt, is cumulative only, and does not take away the action arising by implication on the legal obligation to pay a claim created by law.

1825.

The Mayor &c
vs
Howard

to be left at the office, and will be duly attended." And proved also, that the said notice was published in the *Federal Gazette* and *American* newspapers. They also gave in evidence, that during the year 1817, *Henry Stouffer*, *Nathaniel Hynson* and *James Martin*, were city commissioners, duly appointed and qualified. And they further gave in evidence, that the following petition was made to the said commissioners on Monday the 7th day of April, 1817: "The honourable the mayor and city council of *Baltimore*. Gentlemen—We, the undersigners, property holders and tenants of the ground and premises lying on each side of *Hanover*-street, between *Lee* and *Hill*-streets, beg leave to state to your honours, that they are desirous the street above mentioned, to wit, *Hanover*, should be paved." (Signed by four persons.) And the following entries made in the books of said commissioners: "Monday, April 7th, 1817. The full board met. Received an application for paving *Exeter*-street from *Great York*-street to *Wilkes'*-street, and one for paving *Green*-street from *Pitt* to *Great York*-street; also one for paving *Hanover*-street between *Lee* and *Hill*-streets." "Monday, May 12, 1817. The full board met. Received proposals from *S. W. Bayley* for paving *Hanover*-street from *Lee* to *Hill*-street." "Monday, June 25th, 1817. The board met. Present Messrs. *Martin* and *Hynson*. Sent to the collector warrant for paving tax on *Hanover*-street." And they further gave parole evidence, that upon said application, the said commissioners decided to pave said street, and obtained the verbal assent of the mayor of said city to such pavement; they also offered evidence by parole, that the signers of said petition constituted a majority of the proprietors and tenants inhabiting on said street, between the limits required to be paved. They also gave in evidence, the following warrant: "City of *Baltimore*, ss. The city commissioners to *Thomas Rogers*, Esq. city collector. Whereas a majority of the proprietors of lots bounding on *Hanover* street, between *Lee* street and *Hill*-street, and tenants residing thereon, by a written application to the city commissioners, bearing date the tenth day of March last, requested that the said street should be paved, and the said commissioners having determined on the propriety thereof, did cause to be made the following list of the names of the persons who are liable to pay the tax by law directed to be levied for paving said street, and the

1825.

The Mayor &c
vs
Howard.

amount of the same respectively due from each person, as follows, to wit: *John E. Howard,*" &c. "We, the city commissioners do therefore in pursuance and by virtue of an ordinance, entitled, "An ordinance to appoint city commissioners, and prescribing their duties," hereby authorise, direct and require you to collect from the several persons above named, the sums of money annexed to their respective names, for the purpose above mentioned, and for so doing this shall be your sufficient warrant. Given under our hands and seals, this 23d day of June, 1817.

*Nathaniel Hynson,* (Seal.)
*James Martin,* (Seal.)

Approved the 23d June, 1817, *Geo. Styles,* Mayor."

And also gave in evidence that the said street then was, and still is a street within the city of *Baltimore;* the plaintiffs further offered in evidence, that all that part of *Hanover*-street north of *Lee*-street, had been previously paved, (which is several squares,) and that one square of the city of *Baltimore* extends from *Lee*-street to *Hill*-street; and also gave in evidence a plot thereof, which had been made by the city commissioners, and that the city commissioners caused that part of *Hanover*-street, between *Lee* and *Hill*-streets, to be paved, and that the proportion of said paving tax, chargeable to the defendant, amounted to $789 85. And the defendant, by cross examination of the plaintiffs' witness, proved that *Hanover*-street extended some distance on both sides of the part for the paving of which the petition was presented, and also that all the petitioners resided between *Hill*-street and *Busy*-alley, an intermediate alley between *Lee* and *Hill*-streets. The defendants then prayed the court to instruct the jury that the plaintiffs were not entitled to recover; which instruction the court [*Dorsey,* Ch. J. *Hanson* and *Ward,* A. J.] gave to the jury. The plaintiffs excepted, and the verdict and judgment being against them, they prosecuted this appeal.

The cause was argued in this court at the last June term before BUCHANAN, Ch. J. EARLE, and MARTIN, J.

*Taney* and *Scott,* for the Appellants, contended, 1. The ordinance of March 9th, 1807, conferred the power on the city commissioners to pave the street, and apportion the tax in the manner they have done, provided the proper number of inhabitants applied.

2. The proper number of inhabitants did apply, and the power is well executed.

3. The action of *assumpsit* is a proper remedy.

*Harper*, *R. Johnson*, and *Howard*, for the Appellee.

This cause was argued in connexion with the case of *The Mayor, &c. of Baltimore*, vs. *Moore & Johnson*, *(ante 375.)*

*Curia adv. vult.*

BUCHANAN, Ch. J. at this term, delivered the opinion of the court. This case differs essentially from the case of *The Mayor, &c. of Baltimore, vs. Moore* and *Johnson*, *(ante 375.)* In that case the streets were directed to be paved, and the taxes imposed by special ordinances passed for that purpose. And in this case the paving, for which the amount of the tax sued for was imposed, was determined on by the city commissioners, under the authority of the ordinance of the 9th of March 1807, "to appoint city commissioners, and prescribing their duties;" and it is objected, on the part of the appellee, that no such authority could, under the charter, be conferred upon them, and therefore, that the ordinance itself is void, and the proceedings of the commissioners nugatory; which makes it necessary to inquire into the powers of the corporation in that respect.

By the *ninth* section of the charter, (1796, *ch.* 68,) it is enacted, "that the powers and authority vested in the town commissioners, special commissioners, and port wardens, heretofore appointed by law for *Baltimore-town*, except the authority of the town commissioners to hold elections agreeably to the constitution and form of government, shall cease and determine as soon as this act shall be in force and operation; and the corporation of the city of *Baltimore* are hereby declared to possess, *and may provide for the exercise of* all powers and authorities now vested in the said town commissioners, special commissioners, and port wardens, except the holding elections for delegates to the general assembly." Now, by the *sixth* section of the act of 1782, *ch.* 17, the special commissioners of *Baltimore* were, or a majority of them, directed and empowered "from time to time, as often as there might be occasion, to meet and consult together respecting what streets, or parts of streets, and what lanes or alleys, were to be paved;" "to contract for all the materials for the purpose, and to

employ such and as many workmen as they should judge necessary," &c. By that act unlimited discretionary power was vested in the special commissioners of *Baltimore*, to determine what streets should be paved, &c. By the *ninth* section of the charter, the corporation is authorised "to provide for the exercise" of the same power. Provide for the exercise, how? Why, if necessary, by some other person or persons, and not exclusively by themselves; the very conferring of the power upon them, being of itself a provision for the exercise of it by them, and rendering the express authority "to provide for the exercise of them" unnecessary, if by it the exercise of it by themselves is meant. The *eighth* section of the charter also gives "full power and authority to the corporation to pass all ordinances necessary to give effect and operation to all the powers vested in them," which surely was sufficient authority to them to pass any ordinances necessary to the exercise of the powers conferred by the *ninth* section, no matter what these powers might be. The provision of the *ninth* section, therefore, authorising the corporation to provide for the exercise of them, was wholly unnecessary, unless it was intended to give them the power to provide for the exercise of them by some other persons or agents. The possessing a power, and having authority to exercise a power, are one and the same; and the vesting in the corporation all the powers and authorities of the special commissioners, was an ample provision by the legislature for the exercise of those powers by the corporation, and full authority for them to do so. But "the giving a power," and the giving authority "to provide for the exercise of a power," are not the same, but different—the authority to provide for the exercise of a power not being the possession of the power itself, but a right only to confer it, or to authorise the exercise of it. In this case the intention of the legislature was not to authorise the corporation to provide for the exercise of the powers of the special commissioners, by passing ordinances giving authority to themselves to exercise these powers, that authority being before fully vested, but having so clothed them with these powers, to give them the further power "to provide for the exercise" of them, by their authorised agents, in such manner as in their judgment might be best. The exercise of a power, and providing for the exercise of a power, are very

different things. The passing an ordinance directing any particular street to be paved, would be an exercise by the corporation of the power and authority transferred to them from the special commissioners, to determine what streets shall be paved. But the passing an ordinance, as in this case, authorising the city commissioners to meet and determine what streets shall be paved, would be a providing "for the exercise," by the city commissioners, of that power originally confided to the special commissioners. If the corporation has no right "to provide for the exercise," by the city commissioners or others, of the powers formerly possessed by the special commissioners, that clause of the ninth section of the charter, authorising them "to provide for the exercise" of these powers, is perfectly nugatory, since without it they possessed all the powers of the special commissioners, with authority to exercise them themselves, (which is the same thing, there being no difference between the power to do a thing, and authority to exercise the power of doing it,) and also in the language of the *eighth* section of the charter, "full power and authority to pass all ordinances necessary to give effect and operation to those powers," and consequently to make any provision by ordinance, necessary to their due exercise of them. The words and meaning of one part of a statute may sometimes lead to and furnish an explanation of the sense of another; and it is a rule in the exposition of statutes, that one part should be taken with another, and the whole be considered together, and so construed as that no clause, sentence or word, shall if it can be avoided, be superfluous or insignificant. The clause in question of the *ninth* section of the charter, was intended to have some meaning; to construe it to mean, that the corporation shall have authority to provide for the exercise by themselves only of the "powers and authority" before confided in the special commissioners, would be to render it superfluous, provision for the exercise of them by the corporation, being before made by the same section, in conferring upon the corporation all those powers and authorities; and also the right to provide for the exercise of them, by the general and full power and authority given to the corporation by the *eighth* section, "to pass all ordinances necessary to give effect and operation to all the powers vested in them." And it cannot be taken to have been used without meaning, but was

intended by the legislature to perform some office, and by construing it to mean that the corporation may provide for the exercise of those powers by their authorised agents, or in any manner best suited in their judgment to the end intended, it will be rendered neither superfluous, nor insignificant, but a sensible effect and operation will be given to it, not inconsistent with any of the provisions of the charter. And other clauses of the charter show that to be the sense in which it was used, by showing that it would be superfluous if differently construed. The special commissioners had power and authority to determine on the mode of paving, to contract for materials, and with such and as many workmen as they might judge necessary to be employed; the same power is vested in the corporation. And can it be said, that they have no right to authorise the city commissioners, or other agents, to exercise that power? If they have the right, and if they can authorise the city commissioners to contract for materials for paving, to determine on the mode of paving, and to contract with such workmen as they may judge necessary, why may not the corporation empower them to determine what streets shall be paved? One equally with the other is an employment of the mind, an exercise of the judgment. Why can they "provide for the exercise," by the city commissioners, of one of the powers of the special commissioners more than another? Is there any thing in the charter authorising such a discrimination? If there is, we have not been able to discover it. Moreover, by the *second* section of the act of 1797, *ch.* 54, the supplement to the charter, "full power and authority are given to the corporation to pass all laws and ordinances necessary for paving and keeping in repair the streets." This is a general and sweeping power, an absolute discretionary power to pass any ordinance which in their judgment may be necessary for paving the streets, &c. In the exercise of which, it is not required of them to incorporate, in any ordinance they may pass, a declaration or expression of their opinion of the necessity for passing it. The ordinance itself, if nothing appears to the contrary, must in general be taken as evidence of their thinking it necessary; yet if it should appear upon the face of it to be unnecessary, it would in such case be an excess of authority, and void. But is that the case here? All ordinances are passed by the city council, who sit only once

a year, and though it is true they may be convened by the mayor whenever, in his opinion, the public good may require it, yet there is an expense and inconvenience attending their frequent meetings, that would be burdensome to the city, and vexatious to the individual members of the city council, which it may be expedient to avoid, and which the ordinance in question is, calculated, and was probably intended to obviate, the city commissioners being by it directed to meet twice in every month, who are thus enabled to provide for exigencies as they may arise. And there may be a necessity every month in the year, or oftener, for paving or repairing some street or other in the city, which could not well be attended to by the city council. If then such an ordinance was necessary for paving and keeping in repair the streets, it was authorised by the general and full power given by the supplement, "to pass all laws and ordinances necessary," &c. and is free from the objection, that it delegated to the city commissioners powers which the corporation had no right to transfer. It is not a power to impose a *duty*, or to *make a law* directing a street to be paved, that the corporation could not delegate, and can only exercise themselves, but merely an authority to ascertain, as the agents of the corporation, what streets ought to be paved.

The original act, and the supplement, are to be considered as one system, and the provision of the ninth section of the former, authorising the corporation "to provide for the exercise" of the powers of the special commissioners, and the general power given to them by the latter, to pass all ordinances necessary for paving and keeping in repair the streets, &c. to be construed as if they formed one section or clause, giving full power and authority "to provide for the exercise" of all the powers and authorities which had been confided to the special commissioners, by passing any ordinances necessary for paving and keeping in repair the streets, &c. And so construed, the passing an ordinance, empowering and directing the city commissioners to meet from time to time, to ascertain and determine, (which is all that the ordinance does,) as the agents of the corporation, what streets, &c. ought to be paved or repaired, will be found to be no abuse or excess of power by the corporation. But in truth there is no discretionary power delegated to the city commissioners to say what streets, &c. shall be

paved. The language of the ordinance is "that the city commissioners, or a majority of them, on the first and third Mondays in every month, at such time and place as they may appoint, shall meet and consult together, respecting the levelling, pitching, and paving or repairing the streets, &c. within the city;" "and that the said commissioners may, with the approbation of the mayor, from time to time, proceed to the paving of such streets, &c. only, as a majority of the proprietors and tenants inhabiting thereon shall require." The directions to the commissioners are *to meet and consult together*, but with authority to pave no street without the approbation of the mayor, nor unless it shall also be required by a majority of the proprietors and tenants inhabiting thereon.

Thus the approbation of the mayor, and the request of a majority of the proprietors and tenants, are made a rule for the government of the commissioners. They are made the evidence (by which the commissioners are to be governed,) of the propriety of paving any street, in the absence of which they could proceed to pave none.

It is a determination of the corporation, expressed by ordinance, that the approbation of the mayor, and the request of a majority of the proprietors and tenants inhabiting thereon, is sufficient evidence of the propriety of paving a street, with authority only to the commissioners to proceed under such circumstances to the paving of it.

It was not denied in argument, and is therefore taken as conceded, that the authority given to the commissioners was in this case regularly pursued. As to the tax, it was not, as has been imagined, imposed by the commissioners; they had no authority to do so, nor could the corporation confer upon them such a power, but it was imposed by the ordinance itself, and the assessing and levying of it by them, as directed by the ordinance, was only an apportionment of it—a mere matter of figures and calculation, a ministerial act to carry the law into effect, which it was the duty of the commissioners to perform. In the case of *The Mayor, &c. of Baltimore, vs. Moore and Johnson*, it was held, that the corporation could not tax any particular part or district of the city for paving, unless such paving appeared to be for the benefit of that particular part or district. But in any ordinance directing a street to be paved, and imposing a tax on the district for that purpose,

it need not be stated to be for the benefit of such district, but will be so taken if nothing appears to the contrary. Here the paving was under the authority of a general ordinance, on the application of a majority of the proprietors and tenants residing on the street, and with the approbation of the mayor, as required by the ordinance. The paving of streets is *prima facie* for the benefit of the parts or districts of a town through which they pass, and more especially when applied for by a majority of the immediate inhabitants; and in directing a tax to be levied on such districts for that purpose, the corporation must be considered as having acted on that principle, nothing appearing in the ordinance to the contrary. And though in particular instances it may turn out not to be practically for the benefit of the immediate district; yet that cannot affect the validity of the ordinance, which had such benefit in view. The objection that the application to the commissioners to have the street in question paved, was not made by the proprietors of a majority of the property lying on the street, cannot be sustained; it was made by a majority of the proprietors and tenants inhabiting thereon, in the language of the ordinance, and the act of 1817, *ch.* 148, *s.* 18, declaring "that the mayor and city council shall not be authorised to cause any unpaved street, &c. to be paved, without the assent, in writing, of the *proprietors of a majority of the ground* binding and fronting on such street," &c. must be understood as having a prospective operation only, and not applying to this case, the assessment having been made, and a list of the persons liable to pay the tax, with the amount to be paid by each person, delivered to the city collector for collection, and contracts also entered into for paving the street, before the law was passed.

The objection that the ordinance of the 9th of March 1807 does not designate the persons who are liable to pay the paving tax, at first view has more force; but however strong it might be considered, construing the *ninth* section by itself, it must yield to the principle, that all statutes made in *pari materia* are to be taken and construed together, as if they were one system. 6 *Bac. Ab.* tit. *Statute,* 382. *Rex vs. Loxdale,* 1 *Burr.* 447. *Cunch vs. Croker,* 3 *Mass. Rep.* 21. And that though not expressly referring to each other, and even after one has expired or

been repealed. By the *first* section of the ordinance of the 6th of March 1800, it is directed that the taxes imposed for paving any street, &c. directed to be paved, shall be levied and collected from the owners of lots on each side of such street; thus clearly designating the persons who are to pay such taxes. This ordinance was repealed by the ordinance of the 10th of April 1807, but was in full force when the ordinance of the 9th of March 1807 was passed, and therefore to be considered as in the view of the city council at the time, and being in *pari materia*, is to be taken together with the ordinance of the 9th of March 1807, which so taken together, must be construed as if the provision of the ordinance of the 6th of March 1800, designating the persons liable to pay the tax, was transcribed into it. And so construed, "the owners of the lots on each side of a street, directed to be paved," are designated by the ordinance as the persons liable to pay the tax, and the duty of the commissioners, in making out the list, is merely ministerial. The circumstance, that the ordinance of the 6th of March 1800, has since been repealed, does not affect the construction of the ordinance of the 9th of March 1807. Whatever was the intention of the makers at the time, furnished the rule of construction, and whatever was the correct and legal construction then, is the true construction now, the construction of a law, being the law itself. It is said that the ordinance of the 29th of April 1797, may as well be called in aid of the construction of the ordinance of the 9th of March 1807, (the language being the same,) as the ordinance of the 6th of March 1800. But the ordinance of the 29th of April 1797, is virtually repealed by the ordinance of the 6th of March 1800, which provides a different mode of assessment, and that new mode of assessment is adopted by the ordinance of the 9th of March 1807, which shows, that it was to the ordinance of the 6th of March 1800, then in force, that the city council looked when they passed the ordinance of the 9th of March 1807.

There is nothing in the objection, that it does not appear that the return directed by the *second* section of the ordinance of the 9th of March 1807, to be made by the clerk to the register of the city, of the proceedings of the commissioners, was ever made. The omission to do so, although an act of negligence, does not vitiate what was cor-

rectly done, or exonerate the appellee from the payment of the tax imposed, the liability to which did not in any manner depend upon the discharge; by the clerk or the commissioners, of that branch of their duty, but was created before, and existed independently of it.

The objection that the action was improperly conceived, is founded on the *tenth* section of the act of 1796, the act of incorporation, which authorises the collection of the taxes imposed in virtue of that act, by distress or action of debt, on the supposed ground that they can be recovered in no other way. But the tax in this case was imposed under the supplement, the act of 1797, *ch.* 54, which authorises the tax, but gives no remedy; and where no particular remedy is given, the action of *assumpsit* will lie, on the principle, that where the *law* gives a claim to one against another, it raises an implied *assumpsit* on the legal obligation to pay. But if the tax in question was in fact imposed in virtue of the original act of incorporation, it would make no difference; for the giving a remedy by distress or action of debt, is cumulative only, and does not take away the action arising by implication on the legal obligation to pay a claim created by law.

We are upon the whole of opinion, that the appellants are entitled to recover, and therefore reverse the judgment;

