MERRIAM v. MOODY'S EXECUTORS.

1. Corporation municipal: POWERS WHICH IT MAY EXERCISE. A mu-
nicipal corporation possesses and can exercise the following powers,
and none others: First, those granted in express words; second,
those necessarily implied, or necessarily incident to the powers
expressly granted; third, those absolutely essential to the declared
objects and purposes of the corporation — not simply convenient,
but indispensable; and any fair doubt as to the existence of a
power is resolved by the courts against the corporation and the
existence of the power.

2. —— SPECIAL TAXES: COLLECTION OF BY SALE. The grant in the
charter of a municipal corporation of the power to levy and collect
a special tax on lots within the corporation for the improvement of
walks in front thereof, does not include the power to sell and convey
in case of the non-payment of the tax. Nor will such power be
inferred from an express provision in the charter to the effect that
the collection of the taxes provided for shall be enforced as may be
provided by ordinances of the city.

3. —— MODE OF COLLECTION IN SUCH CASE. Where such grant of
power exists, and the charter or constituent act is silent as to the
mode of collection, the grant is not, by reason of such silence, nugatory,
but the city may provide for the collection of the tax by due course
of law in the institution of judicial proceedings.

Merriam v. Moody's Exrs.

*Appeal from Lee District Court.*

THURSDAY, JUNE 25.

MUNICIPAL CORPORATIONS: POWER TO LEVY AND COLLECT
TAXES: WHEN IT EXISTS. — Action of right to recover possession of part of lot 11, block 63, Keokuk.

It is admitted that the legal title is in the defendants
unless the same was divested by a tax deed of the premises in controversy, executed to the plaintiff by the collector of the city of Keokuk.

This tax deed is the sole foundation of the plaintiff's
title.

This deed is in the record, dated February 29, 1860,
and in substance recites, that on the 23d day of September, 1857, the collector of the city of Keokuk sold to
plaintiff the premises embraced in this cause, being then
delinquent for special taxes due the city, "for macadamizing and curbing on Blondeau street, in front of said
property;" the plaintiff offering to pay, and paying, the
said taxes and charges, and the said property not having
been redeemed in accordance with the ordinances and
charter of said city, and the time for redemption having
expired, the said collector thereupon, by virtue of the
authority vested in him in the name of the city of
Keokuk, conveyed said property to plaintiff.

The main defense insisted upon by the defendants is,
that the city of Keokuk has, under its charter, no power
to sell or to authorize the sale and conveyance of real
estate for the non-payment of the special taxes (that is,
taxes for macadamizing or curbing on the street in front
of the lot) recited in the deed from the city collector to
the plaintiff. The plaintiff maintains that the city has
such power.

It is essential to set out the various provisions of the

charter and amended charter in reference to the levy and collection of general and special taxes.

The "Act to incorporate the city of Keokuk," was approved December 13, 1848. The only sections in this original charter relating to taxes are sections 27, 28, 29 and 30. These are as follows:

"SEC. 27. The city council shall have power to levy an annual tax upon all property, real and personal, within the limits of the said city subject to taxation for county revenue, to carry into effect the provisions of this act: *Provided*, That no such tax shall in any one year exceed one-half of one per cent upon the assessed value of the property upon which the same is levied.

"SEC. 28. The city council shall make out a duplicate of taxes in proportion to the valuation of the property of each individual in said city, on or before the first day of May in each year, to be signed by the mayor and countersigned by the recorder, which duplicate shall be delivered to the collector of said city, whose duty it shall be to proceed to collect the same within such time, and in such manner as the by-laws or ordinances of the said city shall require, and to pay over the amount of such tax so collected, upon an order of the city council, signed and countersigned in the same manner as is provided for said duplicate: *Provided*, That the said council shall have power, on the complaint of any person aggrieved, to correct or amend any illegal or erroneous assessment, before making out or delivering such duplicate to the collector.

"SEC. 29. The collector shall have power to sell personal property, and for want thereof to sell real estate, for the non-payment of taxes within said city, giving the purchaser a certificate of such sale, setting forth a brief description of the property so sold, and at what time he will be entitled to a deed, which certificate shall be assignable by indorsement thereon; but no real estate shall be sold for the non-payment of such taxes, unless the assessment of such tax or taxes shall have been duly notified by publication for at least six consecutive weeks before the day when the said taxes are payable, in some newspaper published in said city, or by notice posted for the same length of time in some public place in each ward thereof, nor unless the intended sale of such real estate shall have been notified in the same manner and for the same length of time prior to such sale.

"SEC. 30. All real estate sold under or by virtue of section twenty-nine may be redeemed by the owner thereof at any time within two years from the date of the sale thereof, by paying the amount of the

taxes for which the same was sold, with cost of advertising and sale, and fifty per cent interest per annum upon the whole amount of such taxes and costs. But if any real estate so sold remain unredeemed at the expiration of two years from the date of the sale thereof, the collector of said city shall, upon the payment of a fee of one dollar to him by the purchaser of such real estate at such sale, his assignee or legal representative, make, execute and deliver a deed of such real estate to the said purchaser or his assignee or representative."

The amendment to the city charter, approved January 22, 1853 (Laws 1853, ch. 77, 132), contains the following sections in relation to taxes :

" SECTION 1. That the city council of said city of Keokuk shall have authority to levy and collect, in addition to the taxes now authorized by law, a special tax of not exceeding one-half of one per cent per annum, upon the property, real and personal, situated in said city, and subject to taxation for county revenue, for the purpose of improving the streets, alleys, and wharf of said city, and the payment of the annual interest upon the bonds that have been, or hereafter may be, issued on account of the improvement of said streets, alleys, or wharf: *Provided*, That the question whether any additional tax shall be levied in pursuance of this section, shall first be submitted by said city council to the legal voters of said city, at any special election, and if a majority of said legal votes be given for said additional tax, then the same may be levied and collected, as provided in this section ; but said tax shall not be levied for more than one year, unless the question of levying said tax be again submitted to the people.

" SEC. 2. The special tax aforesaid shall be levied and collected at the same time, and in the same manner, as the other annual tax levied by said city ; and the said city shall have the same rights, powers and remedies to enforce the collection of the same, by the sale of property, or otherwise, as is or may be provided for in other cases relative to the city revenue.

" SEC. 3. Said tax shall be payable only in money, and, when collected, shall, by said city, be set apart and held separate and distinct from the other portions of the city revenue, as a fund specially pledged for the payment of the annual interest on the bonds aforesaid, and the improvement of the streets, alleys and wharf of said city ; and shall from time to time be so applied by said city council, and for no other purpose whatever.

" SEC. 4. The city council of said city shall have power to levy and collect a special tax on the lot or lots, or the owner or owners thereof, on

any street, lane, avenue or alley, or any part of a street, lane, avenue, or alley, within said city, for the purpose of curbing, paving or grading the sidewalks in front of their respective lots, and keeping the said sidewalks in repair, and for the purpose of lighting such street, lane, avenue, or alley.

"Sec. 5. The city council of said city shall have the power to levy and collect a special tax on the lot or lots, or the owner or owners thereof, on any street, lane, avenue, or alley, or an part thereof, within said city, according to their respective fronts, for the purpose of paving, planking, or macadamizing the streets, lanes, avenues or alleys in front of their respective lots: *Provided*, That in case a special tax be levied on the owners of property in said city, in pursuance of said sections four and five, for the purpose therein specified, no tax, either general or special, shall thereafter be levied on the same property to make the same kind of improvements on any other street, lane, avenue or alley, or any part thereof, in said city."

Section 6 gives the city power to lay out public squares, streets, etc., and to "apportion and assess the damages upon the real estate of the persons benefited," which "assessments shall be collected and paid over to the persons" entitled, but the mode of collection is not in said section specified.

Section 7 relates to wharves, and provides that "in case private property is taken therefor under the power herein conferred, the damage and benefits shall be assessed, collected and paid over in the manner provided in the section in reference to streets."

Sections 8, 9 and 14, the only other sections relating to taxes, are as follows:

"Sec. 8. The assessment of taxes made by virtue of the authority contained in the four preceding sections of this act, shall be enforced and collected as may be provided by ordinances of the city council of said city.

"Sec. 9. All taxes and assessments, general or special, levied or assessed by the city council under this act, or the act to which this is an amendment, shall be a lien upon the real estate upon which the same may be imposed, voted, or assessed, for one year from and after the assessment has been confirmed by the city council, and upon per-

sonal property from and after the delivery of the warrant for the collection thereof, until paid, and no sale or transfer shall affect the lien: *Provided*, That in case the collection of any assessment shall be delayed by judicial proceedings, the same shall continue a lien (unless set aside) upon such real estate, for the period of one year from and after the final disposition of such judicial proceedings." (See section 22 of the amendment of 1856 below referred to.)

" Sec. 14. All deeds made to purchasers of lots sold for taxes or assessments by order of the city council, in pursuance of this act, or the act to which this is amendatory, shall be conclusive evidence in all controversies and suits in relation to the right of the purchaser, his or her heirs or assigns, to hold or recover the premises, except it be shown that no tax or assessment was levied on the lot or lots, or that the same was paid before the sale, or that the lot or lots were redeemed, in pursuance of the provisions of the charter or ordinances of said city, before the execution of the deed or deeds."

. The charter was further amended in 1856. (Laws 1856, chap. 17, p. 421.)

Section 17 gives damages for changes of grade, to be assessed upon the real estate benefited, and section 18 provided as follows:

" Sec. 18. That the sums assessed by virtue of the preceding section upon any lot or part of lot or real estate in the city of Keokuk, shall be a lien upon said real estate, and shall be collected by said city council in the same manner as the other special taxes are now or may be collected, and the amount apportioned by said commissioners against the city of Keokuk shall be paid by said city."

Section 22 is as follows:

" Sec. 22. That all taxes assessed by virtue of any law or ordinance of the city of Keokuk, upon the real estate of said city, shall remain a *lien* upon said real estate, until said taxes are paid to said city, or her proper collecting officer, and so much of any law that conflicts with this provision is hereby repealed."

Soon after the amended charter of 1853 took effect, viz., on the 11th day of March, 1853, the city council passed an ordinance, known as No. 41, the material portions of which are as follows:

Merriam v. Moody's Exrs.

Section 1 provides that when any special taxes are levied by virtue of sections 4, 5, 6 and 7, of the amended city charter of 1853, a warrant shall be issued to the collector, and such "warrant shall be full and sufficient authority to the collector to collect the taxes therein specified."

Section 3 provides that the collector, in case of the non-payment of said tax, shall "give notice of the sale of the lot or lots;" and, "if said tax and costs are not paid, the said collector shall, at the time and place stated in said notice, proceed to sell the said lot or lots or parcels of land to the person who shall pay the said tax and costs, for the least quantity thereof, to be taken off lengthwise from the left-hand side of the lot or parcel of land, when standing in front of and facing the same."

Section 4 provides that the collector shall give a certificate to the purchaser, setting forth the amount of tax and costs for which each lot was sold, with a description of the property; and that if said lot is not redeemed the purchaser "shall be entitled to a deed."

Section 5 fixes the time of redemption at two years.

Section 8 reads as follows: "If any lot, or parcel of lot, so sold remains unredeemed at the expiration of two years after sale thereof, the collector of the city shall, upon the payment to him of a fee of one dollar by the purchaser, his assigns or legal representatives, make, execute and deliver a deed of conveyance of such real estate to the said purchaser, or his assigns or representatives; which deed shall vest in the grantee all right, title and interest which the charter of said city of Keokuk, and the acts amendatory thereto, authorize."

The District Court was of opinion that the city had no power to sell the lot for the delinquent assessment, and accordingly gave judgment for the defendant.

The plaintiff appeals.

*H. Scott Howell* for the plaintiff.

*P. T. Lomax* for the appellee.

DILLON, Ch. J.—This case is not governed by that of *McNamara* v. *Estes* (22 Iowa, 246), because distin- guishable from it in three different particulars. The sale in that case was *after* the act of March 22, 1858, " Concerning taxes levied by municipal authorities " (Rev. § 1144). The sale in this case was *before* the passage of that act.

1. CORPORATION MUNICIPAL: powers which it may exer- cise.

In that case the plaintiff was seeking *to collect* by suit. In this case the plaintiff seeks to recover upon his tax deed as the source and evidence of an absolute and irredeemable title. In addition to this, the point as to the power of the city to sell and convey real estate for the non-payment of special taxes levied under sections 4 and 5 of the amended charter of 1853, was neither made by counsel nor decided by the court. In that case the total want of power to sell was not denied; the questions made related to irregularities concerning the exercise of the power. In determining the question now made, it must be taken for settled law, that a municipal corpora- tion possesses and can exercise the following powers and no others : First, those granted in express words; second, those necessarily implied or necessarily incident to the powers expressly granted ; third, those absolutely essential to the declared objects and purposes of the corporation — not simply convenient, but indispensable ; fourth, any fair doubt as to the existence of a power is resolved by the courts against the corporation — against the existence of the power. *Vincent* v. *Nantucket*, 12 Cush. 103, 105 ; *Clark, Dodge & Co.* v. *Davenport*, 14 Iowa, 494; *Clark* v. *Des Moines*, 19 id. 199 ; *Minturn* v. *Larue*, 23 How. U. S. 435 ; *Bank* v. *Chillicothe*, 7 Ohio St. 2, pp. 31, 36,

Merriam v. Moody's Exrs.

per HITCHCOCK, J.; *Collins* v. *Hatch*, 18 id. 523; *Sharp* v. *Spear*, 4 Hill, N. Y. 76, approved in 2 Denio, 330, and in 10 N. Y. 329; *Ham* v. *Miller*, 20 Iowa, 450, 453; *Mays* v. *Cincinnati*, 1 Ohio St. 268.

In the light of these fundamental principles, the question for determination in the present case is, whether, as a 2. —— special mode of "enforcing and collecting the special taxes: collection of taxes" or assessments authorized by sections 4 by sale. and 5 of the amended charter of 1853, the city may lawfully pass an ordinance providing, that, in case of the non-payment of such taxes or assessments, the lots in front of which the improvement is made may be sold and conveyed by the city. That the city claimed to possess such a power is manifest from ordinance No. 41, set out in the statement. This ordinance, in express terms, authorized such sale and conveyance. If the city possesses the power it claimed and exercised, then the sale is valid, unless the irregularities and defects urged against it are sufficient to invalidate it.

The extent of a grant of power is to be ascertained from all of the sections relating to the subject; that is, they are to be read and construed in the light of each other, the better to determine the ultimate object of inquiry, viz., what did the legislature intend? *The Mayor* v. *Howard*, 6 H. & J. 392. If it clearly intended to confer the power, the courts should hold it to exist, otherwise not.

The grant to the city in the above mentioned sections 4 and 5 is of "power to *levy and collect* a special tax" on lots for curbing, macadamizing, etc., in front thereof.

If this stood alone, — if, in other words, the only grant was of power "to levy and collect,"— then, as a proposition of law, declared by many decisions, it would be plain that the city could not provide for such collection by a sale and conveyance of the property. This precise point was

the one decided by this court in the case of *Ham* v. *Miller* (20 Iowa, 450). And see also *McInerney* v. *Reed*, 23 Iowa, 410; Blackwell on Tax Titles (ed. 1864), ch. 31, p. 448, and authorities there cited.

Where such is the grant, and the charter or constituent act is silent as to the mode of collection, the grant of 3. —— mode of power is not nugatory, but the city may provide for the collection of the tax by due course of law, *i. e.* by judicial proceedings. *McInerney* v. *Reed*, *supra ; Bergen* v. *Clarkson*, 1 Halst. 352 ; *Mayor* v. *Howard*, 6 H. & J. 383 ; *Dugan* v. *Mayor,* 1 Gill & J. 499 ; *Bergen* v. *Clarkson*, 1 Halst. 352.

The authorities above referred to clearly establish that the power "to levy and collect," given by said sections 4 and 5 of the amended act of 1853, would not authorize the council to sell and convey the property of those who neglected to pay.

In *Ham* v. *Miller* (*supra*), WRIGHT, J., delivering the opinion of the court, distinctly states that "the power to assess" or "to collect taxes" does not include that of selling and conveying in case of non-payment." And to this effect are all of the adjudged cases, without exception.

Indeed, it has not been claimed in argument that the power to sell could be derived from sections 4 and 5, under which the special tax in question was levied.

If the power exists, it must be found elsewhere. We, therefore, proceed to notice the other sections of the charter relied on by the plaintiff as conferring the power.

With respect to the annual tax authorized by section 27 of the original charter (act of December 13, 1848), the general mode of collection is pointed out and a sale and conveyance expressly authorized (§§ 28, 29, 30).

And respecting the general tax, though called "a special tax"—general, because to be levied "upon the property, real and personal, situated in said city"—

authorized by section 1 of the act of 1853, it is provided that "the said city shall have the same rights, powers and remedies to enforce the collection of the same by the sale of property, or otherwise, as is or may be provided for in other cases relative to city revenue. Act of 1853, § 2.

Then come sections 4, 5, 6 and 7, providing for the levy of certain special taxes and their assessment upon the property benefited. It was under sections 4 and 5 that the special tax in question was levied. None of these sections specify the mode of collection.

This is done in section 8, which reads as follows:

"SEC. 8. The assessment of taxes made by virtue of the authority contained in the four preceding sections of this act shall be enforced and collected as may be provided by ordinances of the city council of said city."

Does this give to the council power to provide by ordinance for the sale of the property of delinquents?

It is our opinion that it does not. This opinion is based upon the language of section 8, and upon the argument derived from the absence of the power to sell which is *expressly given* with respect to the general tax (section 27 of original charter), and the special tax specified in sections 1 and 2 of the amendment of 1853, and which is not expressly given with respect to the special taxes mentioned in sections 4, 5, 6 and 7 of the amended charter.

The object of section 8 was to remove by express words all doubts as to the power of the city to enforce and collect the tax by ordinance. But the power to "collect" does not, as we have seen, authorize collection by sale. It is said by Mr. Justice WRIGHT, in *Ham* v. *Miller*, that the power to sell must be *expressly* given.

So Mr. BLACKWELL says that a corporation whose powers, in this respect, are more strictly construed than those of the State, "cannot *sell* the goods or lands of the

delinquent, unless there is an *express grant* in its charter." Tax Title (4th ed.), 448. And so the law is stated in *Bergen* v. *Clarkson*, 1 Halst. (N. J.) 352, 361.

If this is the law, then, inasmuch as there is no express power to sell conferred as respects the taxes in question, this is an end of the plaintiff's case.

But it has been declared that such a power may exist by *necessary implication*. *Sharp* v. *Spier*, 4 Hill, 76, per BRONSON, J.

It may be conceded that if the power to sell were absolutely necessary to carry into effect the power expressly delegated, that the power to sell would be held impliedly to exist. But how can that be claimed in this case? The express power delegated is to collect the taxes, or at most to collect in such way as the corporation may provide by ordinance. This power can be exercised and enjoyed without exercising the power of sale. Hence, on acknowledged principles, the power to sell cannot be held to be given by *necessary* implication. There is no necessity for any such implication in order to enjoy the power.

Again, every corporation has the implied common law power to pass all such reasonable ordinances as may be necessary to carry into effect powers expressly conferred.

And in this view, it is very doubtful whether section 8 gives the city any more or greater power to pass ordinances to enforce the collection of the tax than it would have without this section.

Again, in respect to all other taxes except those mentioned in sections 4, 5, 6 and 7, the power to sell is expressly conferred upon the city. It is not conferred with respect to these. The fair and natural inference is, that the legislature purposely withheld it. *Expressio unius*, etc., is applicable.

Again, by the common law, the power of corporations

to pass by-laws is kept within specific bounds; and it is settled, that unless there is express power, or, what is equivalent, a power by *necessary* implication, that they cannot ordain forfeitures of property or enforce by-laws by a pecuniary penalty, or inflict punishments, or ordain a sale of property for neglect to pay taxes and assessments. *Bergen* v. *Clarkson*, 1 Halst. 352, 361, and cases cited. In construing section 8, these well settled principles are to be borne in mind.

Again, there is, in the difference between general taxes and special assessments, a reason why the legislature should, with respect to the one have conferred the power to sell, and not with respect to the other.

It would be almost impracticable for the city to collect by suit the amounts levied for general taxes and for the special tax authorized by section 1 of the act of 1853. The amounts are small, and the debtors as numerous as the tax payers of the corporation. With reference to the general tax, it has to be collected annually. To prevent this inconvenience, the power to sell is expressly conferred.

On the other hand, the number of persons assessed for local improvements is much more limited, and the amounts assessed frequently large. These assessments are made in occasional instances only. It is not impracticable to collect these by suit. Indeed, collection of such assessments by suit and not by sale, is the mode provided now by the general incorporation act for cities and towns. Rev. ch. 51, § 1068.

In the case at bar, the assessment upon the lot in question exceeded $100. For these reasons, it is our opinion that section 8 of the amended charter does not confer upon the city the power to enforce the collection of the tax by a sale of the property.

The only other section relied on by the plaintiff is section 14, which is copied in the statement of the case.

This section, when carefully examined, will be seen to contain no grant of power whatever. It is provided for a different purpose. Its sole object is to declare the effect, as instruments of evidence, of "deeds made to purchasers of lots sold for taxes or assessments."

The power to sell is not necessarily or even properly to be implied from this section. It refers to deeds which are *authorized to be made by the charter and amended charter*. So to phrase it, this section has something to "feed upon" in section 29 of the original charter, and sections 1 and 2 of the amended charter of 1853.

Its language is not made inoperative by holding that it has no reference to sections 4, 5, 6, 7, or 8, of the amended charter.

Again, suppose it does have reference to deeds for assessments for local improvements, yet if the legislature, by inadvertent omission, failed to give the power to sell, such power is not *necessarily* to be implied from the provision regulating the effect of the deed, and if not *necessarily* to be implied, it does not exist.

For it is easy to see that the legislature might regulate the effect of deeds on the mistaken supposition that they had authorized such deeds to be made, when in fact they had never given any such authority. In such a case the power to make the sale and deed could not be necessarily implied from the provision regulating the effect of the deed as evidence. It will not do to derive the power to sell from doubtful inferences.

The alleged grant of the power to sell for failure to pay assessments for local improvements is illusory. At first glance it seems that it is given by sections 4 and 5 of the amended charter, but when we get there it is impossible to find it. In advance lies section 8 which apparently gives it, but reaching that point it still eludes us, and in the distance we seem to see it in

section 14, arriving at which it again escapes the grasp, and can nowhere be found or localized within the demesne of the chartered rights of the corporation. It is an *ignis fatuus*, without any actual existence.

In conclusion, we remark that it has thus been shown that there is no express power of sale given to the city.

It has also been shown that it possesses no such power by necessary implication; that no such power is necessary in order to exercise or enjoy those expressly granted.

The rule of *law* denying to these corporations *constructive power* to sell the property of the citizen, except where the power is unmistakably given, and the further rule of law, that, if there fairly exists a doubt concerning the power, the doubt is to be resolved against the existence of the power, in favor of the public and against the corporation, are founded in the highest wisdom and sanctioned by universal experience.

It is our opinion that the tax deed, on which the plaintiff relied, did not convey to him the title to the lot, and, hence, the court did not err in giving judgment for the defendant.

Affirmed.