## SURRATTS ASSOCIATES *v.* PRINCE GEORGE'S COUNTY, MARYLAND ET AL.

[No. 40, September Term, 1979.]

*Decided December 14, 1979.*

556

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Andrew W. Dyer,* with whom were *Wilfred M. Dyer, Jr.,* and *Dyer & Dyer* on the brief, for appellant.

*Robert B. Ostrom, County Attorney,* and *Carl A. Harris, Deputy County Attorney,* for appellees.

DIGGES, J., delivered the opinion of the Court.

In this appeal that stems from an action ex contractu for past due general taxes, instituted by tax collecting authorities against a defaulting property owner, we are requested to determine: 1) Whether real property taxes may be collected, either through invoking the tax sale provision and its related redemption foreclosure procedure set out in Md. Code (1957, 1975 Repl. Vol., 1979 Cum. Supp.), Article 81, §§ 70-123C [1], or alternatively, by way of an action of assumpsit under section 206 of that article? [2] And, if so, 2) Whether the sale and purchase of the property by the county at a tax sale bars a subsequent suit of assumpsit because either the tax liability has been satisfied or the "election of remedies doctrine" is applicable?

According to the undisputed facts, which we glean from the record before us, the appellant, Surratts Associates, is a joint venture owning several parcels of unimproved land in Prince George's County. These properties are free of encumbrances except for a section 70 lien for unpaid state and county real estate taxes due for fiscal years 1977, 1978 and 1979. It was because of failure to pay the taxes due for the initial two of these years that one of the appellees, Director of Finance for Prince George's County, as he was authorized to do by sections 72 through 91, offered appellant's properties for sale at a public auction on the first Monday of May, 1978. When no private bid was received at the sale for the Surratts parcels, they were knocked down to the other appellee, Prince George's County, and a certificate of purchase was issued to that county by the director. *Id.* § 88. Instead of instituting a right of redemption foreclosure proceeding, as the county may have, eventually, been permitted to do by sections 88 and 89, the two appellees joined in filing the present action of assumpsit under section 206 to collect the tax arrearage. After initially claiming taxes, penalties, interest and costs for

---

1. *See also,* Md. Rule BS40 which states: "The procedure for tax sales, including provisions for the order of publication, shall be in accordance with Code, Article 81, Sections 70-123."

2. When in this opinion we allude to a code section without citing the article of which it is a part, the reference is to Article 81 as codified in Md. Code (1957, 1975 Repl. Vol., 1979 Cum. Supp.).

fiscal years 1977 and 1978, the appellees filed an amended declaration, seeking additionally, the taxes which had become due for 1979, with a motion for summary judgment attached, demanding $36,564.71, the amount concededly then owed for taxes and costs.[3]

## I

As it did in the trial court, the taxpayer objected in this Court to the present contract suit as being improperly conceived. Appellant's opposition is founded principally on its belief, mistakenly in our view, that section 206, authorizing collection of taxes through an action of assumpsit, initially enacted in 1929, was later repealed as it pertains to real property taxes by the inclusion of section 122A in the new tax sale and redemption foreclosure procedures that were substituted for the former "Tax Sale" subtitle of Article 81 with the enactment of chapter 761 of the 1943 Laws. These two legislative provisions, which are of prime interest here, in relevant part read:[4]

### SUITS FOR COLLECTION OF TAXES

§ 206. Assumpsit....

(a) Any tax may be collected from the person liable under this article to pay the same by action of assumpsit instituted at any time after said tax shall become due and payable, within the period of limitations prescribed by this article, and such suit may be maintained notwithstanding the existence of other remedies by way of sale of real estate, or otherwise.

---

3. Taxes for fiscal year 1980 became due and payable on July 1, 1979.

4. There has been no pertinent substantial change in the wording of either section 122A or section 206 following the initial enactment of each. However, for the reader's information, section 122A was set out as a footnote to section 90W in the 1947 Cum. Supp. to the 1939 Code, and as a footnote to section 121 in the 1951 Code; also, section 206 was codified as section 145 in the 1929 Supp. to the 1924 Code, as section 154 in the 1939 Code, and as section 204 in the 1951 Code.

TAX SALES

\* \* \*

§ 122A. Repeal of inconsistent acts . . . .

All acts and parts of acts, whether public general or public local, inconsistent with the provisions of this subtitle, be and the same are hereby repealed to the extent of such inconsistency; but all laws repealed by this subtitle shall nevertheless remain in force in respect to any and all tax sales made or instituted prior to December 31, 1943. Any and all tax sales made or instituted after December 31, 1943, shall be made only in accordance with the provisions hereof . . . . [Md. Code (1957, 1975 Repl. Vol., 1979 Cum. Supp.), Art. 81, §§ 206, 122A.]

The issue posed by the appellant — Does section 122A either expressly or by implication nullify the previously enacted section 206 as far as it pertains to collection of past due real estate taxes? — is one we can only resolve by inquiring whether the legislature intended the earlier act should survive with respect to those taxes the birth of the latter. In undertaking this probe, we mention that there exists no dearth of decisions by this Court explaining the relevant considerations to be taken into account in construing legislative enactments. Not too long ago, Judge Smith chronicled most, if not all, of the more recent of these holdings in his opinion for the Court in *Police Comm'r v. Dowling,* 281 Md. 412, 418-20, 379 A.2d 1007, 1010-12 (1977). We extract from that case, with citations of authorities omitted, the more pertinent of these tenets:

> Where two statutes deal with the same subject matter as [is true with sections 122A and 206] here, they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each. This is true notwithstanding the fact that the statutes may have been enacted at different times with no reference to each other, because in that case the rule

is that statutes must be harmonized to the extent possible. This principle of statutory construction operates because the law does not favor repeal by implication. Put in slightly different words, "Yet another cardinal rule of statutory construction is that repeals not express will not be found unless demanded by irreconcilability or repugnancy." [*Id.* at 418-19, 379 A.2d at 1010-11.]

Other principles mentioned in *Dowling* include:

The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. A court may not insert or omit words to make a statute express an intention not evidenced in its original form. [*Id.* at 419, 379 A.2d at 1011.]

Although the content of what is now section 206 in the present Code was first introduced into our statutory law with the enactment of chapter 226 of the 1929 Laws of Maryland, prior to that time it was a part of the common law of this State, *Henderson v. Taylor,* 59 Md. 338, 342 (1883); *Appeal Tax Court v. W.M. R.R. Co.,* 50 Md. 274, 295 (1879); *Dashiell v. Baltimore,* 45 Md. 615, 621 (1877); *Mayor, &c. of Balt. v. Howard,* 6 H. & J. 383, 394 (1824). In that Act, after expressing in its preamble "a desire to approve the recodification recommended by the [Maryland Tax Revision] Commission," [5] the General Assembly by section 1 repealed the then existing "Article 81 of the Code of Public General Laws of Maryland (1924), entitled Revenue and Taxes [and enacted in lieu thereof] a new article [81], with the same title

---

5. The Commission was appointed by the governor pursuant to direction of the Act of 1927, ch. 687. The members named were Arthur W. Machen, Jr., Chairman, Harry E. Gilbert, Phillips Lee Goldsborough, Charles C. Wallace and F. Brooke Whiting.

and appropriate subtitles." 1929 Md. Laws, ch. 226. Under a separate subtitle which was designated "Suits for Collection of Taxes", what is now section 206 was in chapter 226 set out as section 145. In its report to Governor Ritchie which accompanied the Tax Revision Commission's draft of a suggested new revenue and tax statute for submission to the General Assembly, the Commission stated that its "primary object . . . has been to recodify in some intelligible form the present confused jumble of antiquated, obsolete, ambiguous, inconsistent, redundant and unintelligible statutes, with as few changes in substance as possible." *Maryland Tax Revision Commission Report* at iv (1928). Among the further comments contained in the report appears the following:

### Collection by Suit or Attachment.

The present law contains numerous, partially redundant and partially inconsistent, special provisions for collection of taxes by suit against the person or corporation liable therefor; and even where no such special provision is found, a suit at common law may be maintained. We have provided expressly that all taxes may be collected by action of assumpsit, and have outlined any special proceedings in such action, but have omitted as unnecessary any provisions for suits to collect particular kinds of taxes.

As we are abolishing distraint for taxes, we have inserted a provision that any suit for collection of taxes may be begun by attachment against the lands, chattels or credits of the delinquent, as if the defendant were a non-resident. This provision may be used advantageously wherever it is apprehended that the defendant may make way with his property. [*Id.* at xiv.]

With respect to tax sales the Commission's report explains:

### Tax Sales.

The provisions as to tax sales are now largely different in each county and in the City of Baltimore.

> There is no reason why one uniform procedure should not be used throughout the State, and every possible reason in favor of such a procedure.
>
> We have, therefore, entirely rewritten the provisions relating to tax sales, and have endeavored to provide a uniform and equitable procedure for the entire State. Our first and fundamental object is to make sure, so far as humanly possible and as consistent with the interest of the public, that no landowner should have his property sold for taxes over his head without actual and not merely constructive notice. Our second and subsidiary object is to provide a procedure that will give a good title to the purchaser, and thus enable a fair price to be obtained, and also prevent the land sold from being rendered unmarketable. [*Id.*]

While the General Assembly adopted without change the recommendations of the Tax Commission pertaining to suits of assumpsit, it was not as true to the Commission's suggestions when it came to the provisions for collecting taxes by way of tax sales. *Compare id.* at 97-99 [*and*] *id.* at 55-66 *with* 1929 Md. Laws, ch. 226 (codified as Md. Code (1924, 1929 Supp.), §§ 145-150) [*and*] *id.* (codified as Md. Code (1924, 1929 Supp.), §§ 69-89). Instead of adopting one uniform procedure as urged by the Commission, the legislature enacted, on its own initiative, as part of chapter 226, section 69½ of the Code, in which it authorized the continued use of any local tax sale procedures adopted by any political subdivision prior to the Act, unless the city or county affirmatively elected to be governed by the new procedures which chapter 226 had just established. *See* 1929 Md. Laws, ch. 226, *codified in* Md. Code (1924, 1929 Supp.), Art. 81, § 69½, *recodified in* Md. Code (1939), Art. 81, § 73, *repealed by* 1943 Md. Laws, ch. 761.

With this historical data being available, it becomes readily apparent that by enacting chapter 226 of the 1929 Laws, the General Assembly, with forethought, recognized and statutorily authorized, under separate subtitles within the then new Article 81, alternative procedures as being

appropriate for collecting taxes from defaulting taxpayers. The appellant does not take issue with what we have just said, but it urges, nonetheless, that when the General Assembly fourteen years later enacted chapter 761 of the 1943 Laws, it by section 3 of that chapter (presently codified as section 122A) expressly repealed, and if not expressly by implication, the provisions of section 206 as it pertains to collecting taxes due on real property. We reject this contention as being unsound.

Chapter 761 of the 1943 Laws was, as was chapter 226 of the 1929 Laws, drafted and enacted following a study and report — this time by the Research Division of the Legislative Council at the request of that council, then an agency of the General Assembly. The breadth of the study, resulting in the legislative recommendations made, encompassed according to the report's preface authored by Dr. Horace E. Flack, Director of Research, an examination "of the laws relating to *tax sales,* not only in Baltimore City, the several counties and municipalities of the State, but also the laws of other states." C. Everstine, *Tax Sales in Maryland,* Research Division-Legislative Council of Maryland at iii (Rept. No. 14, 1942) (preface) (emphasis supplied). The preface continues: "A study of these laws shows that there is no general uniformity of procedure in the several political subdivisions of the State and that there is great confusion and uncertainty .... As a result of this uncertainty, purchasers have hesitated to buy property at tax sales and title companies have refused to guarantee titles of tax sale property." *Id.* Distinct from the preface, the report, itself, noted that "[e]ach of the twenty-three counties and approximately 150 incorporated municipalities in Maryland has in its local code provisions for tax sales and tax sale titles. In addition there are two alternate systems of tax sale procedures in the general code, [(Md. Code (1939), Art. 81, §§ 72-90, 197-206)] and Baltimore City has a separate statute of its own [(1941 Md. Laws, ch. 540)]." *Id.* at 1. The research report comments further:

> In the details of the acts, however, there are considerable differences. Some counties, for

example, have very few local provisions and rely almost exclusively on the public general laws. Other counties have very detailed local laws. The same is true of incorporated towns within the counties. In some instances, each local code covers tax sales in detail. In other instances, the municipal code states only that the town's procedure shall be covered either by county or state law. There are, too, all sorts of combinations between the two extremes.

Other sets of wide differences are contained in such comparatively unimportant items as the manner of advertising the sale. They refer, for example, to whether the notice of sale shall be printed in two papers or three papers or printed for three weeks or four weeks. There also are variations in the periods allowed for redemption and in the amounts of fees to be collected by the tax collector.

Similarly, there are noticeable differences in what the acts say as to the quality of the title which a purchaser gets. A few of the acts say nothing at all on this point. Others give the purchaser simply the same title as that formerly held by the delinquent tax payer. Some acts say only that the treasurer is to "convey" title. In still others it is said that the purchaser's title shall be "good" or that he shall have a "fee simple" title. Possibly the most detailed reference to the quality of title is in the new act for Baltimore City, which gives the purchaser an "absolute and indefeasible title in fee simple." [*Id.* at 2-3.]

The annual report of the State Tax Commission made to the governor in January 1943, sheds additional light on what the legislature intended when it accepted the uniform recommendations of the several bodies studying the problems relating to tax sales, and enacted into law the suggested sale and redemption foreclosure procedures contained in chapter 761. The Tax Commission's recommendation in part reads:

Tax sales.

At the request of the Legislative Council, the

Chairman of the Tax Commission [(William L. Henderson)] served as Chairman of a Committee [6] to draft a Statewide bill on this subject.... The Committee had a number of meetings and prepared a draft of bill modeled on the Act passed for Baltimore City in 1941. It is believed that this bill, if adopted, will greatly improve the marketability of tax titles, fix the responsibility for tax sales, *and eliminate the unnecessary variations in local procedure.* The State Tax Commission recommends that the bill be adopted. [Md. State Tax Comm'n, *Fourteenth Biennial Report* 23 (1943) (emphasis supplied).]

It is abundantly clear from a reading of chapter 761 without more, that the General Assembly was in that Act concerned only with the manner of selling real property, the integrity and marketability of the title a tax sale purchaser would receive upon complying with the steps designed to protect the interest of a defaulting taxpayer, and not the elimination of any other type of procedure that could be utilized by appropriate officials to collect past-due real property taxes. In other words, when, through section 122A, the legislature repealed "all acts and parts of acts ... inconsistent with the provisions of [the tax sale] subtitle," it was merely rescinding all of the variations in procedures, then existing, for conducting a tax sale. Additionally, mention is made of the fact that when the legislature wanted to repeal by chapter 761 a part of the statutory law related to collection of real estate taxes, but unrelated directly to collection of taxes by way of a tax sale, it explicitly did so. See section 1 of ch. 761, 1943 Md. Laws, which repealed "Sections 197-206, inclusive, of said Article [81, of the 1939 Code under] the sub-title 'Alternative Procedure as to Tax Sales.' "

However, should there remain doubt in anyone's mind, after reading as a whole, what appears to us to be the clear and unambiguous language of the 1943 Act — that section

6. The other members of the committee were: William J. McWilliams, E. Stuart Bushong, R. Dorsey Watkins, Paul J. Wilkinson, Louis J. Jira and James J. Doherty.

122A repeals only inconsistent public general and public local statutes pertaining to "tax sales" and not other types of proceedings for collecting past due taxes — such dubiousness should be dispelled once the legislative history of chapter 761 here related is learned. Moreover, it is appropriate that we now pause and recall the settled principle that laws enacted for the collection of general taxes must be interpreted with very great liberality; consequently, construction should not be undertaken with an eye to defeating the legislation, but with both eyes focused on giving it force, if reasonably possible. *Casey Dev. v. Mont. County,* 212 Md. 138, 147, 129 A.2d 63, 68 (1957).

Consequently, considering together the two acts of the legislature with which we are here primarily concerned (chapter 226 of the 1929 Laws and chapter 761 of the 1943 Laws), and giving full effect to the plain object and meaning of each, we hold that it was the clear intention of the General Assembly to provide taxing authorities, and their collection agents, alternative methods of proceeding against defaulting real property taxpayers. Our conclusion here is directly supported by the early decision of this Court in *Mayor, &c. of Balt. v. Howard,* 6 H. & J. 383 (1824), where it is said:

> The objection that the action was improperly conceived, is founded on the tenth section of the Act of 1796, the Act of incorporation, which authorizes the collection of the taxes imposed in virtue of that Act, by distress or action of debt, on the supposed ground that they can be recovered in no other way. But the tax in this case was imposed under the supplement, the Act of 1797, ch. 54, which authorizes the tax, but gives no remedy; and where no particular remedy is given, the action of assumpsit will lie, on the principle, that where the law gives a claim to one against another, it raises an implied assumpsit on the legal obligation to pay. But if the tax in question was in fact imposed in virtue of the original Act of incorporation, *it would make no difference, for the giving a remedy by distress or action of debt, is cumulative only, and does not take*

*away the action arising by implication on the legal obligation to pay a claim created by law. [Id. at 394 (emphasis added).]*

*Accord, Dashiell v. Baltimore,* 45 Md. 615, 621-22 (1877).

## II

The appellant next says that if, adverse to its urging, this Court decides the first point in the manner we have just announced, nonetheless, the present contract action may not be maintained. In support of this assertion, as we perceive its argument, Surratts reasons that when the Director of Finance offered the property at tax sale and Prince George's County purchased it at that auction, the tax indebtedness was satisfied so that this action of assumpsit may not now be pursued. We again disagree.

The short answer to this contention is that, in fact, the taxes have not been paid and the taxpayer remains in possession of the property, exercising all rights of ownership over it. § 95. All the county thus far has received is a certificate of purchase which, unless sold or assigned (§ 89), authorizes, within a statutorily proscribed time frame, foreclosure of redemption rights (§ 88) if payment by the owner is not in the meantime made. §§ 92-94. Of course had there been a private purchaser at the tax sale with the tax collector receiving payment in accord with section 81, or if payment by the way of: sale of the certificate of purchase (§ 89), redemption by the owner (§§ 92-94), or through the foreclosure of the right of redemption decreeing title to the real property to be in the county (§ 112), the tax indebtedness would become satisfied and no other suit could be maintained.

Surratts' argument, in this regard, may also be construed, as was apparently done by appellees, as invoking the "election of remedies doctrine," *i.e.,* that the county and its tax collector irrevocably waived its right to sue in assumpsit by selling the subject property at a tax sale. However, even if so characterized, the appellant cannot prevail.

The doctrine of election of remedies is quite technical and

should not be lightly employed by a court. *Shoreham v. Randolph Hills,* 269 Md. 291, 299, 305 A.2d 465, 471 (1973). Among its necessary elements are the following: (1) two or more coexisting remedies between which there is a right of election; (2) inconsistency as to such available remedies; and (3) the actual bringing of an action and pursuing it to a final judgment. *See Shoreham v. Randolph Hills, supra; Levin v. Singer,* 227 Md. 47, 60, 175 A.2d 423, 430 (1961); *Bolton Mines Co. v. Stokes,* 82 Md. 50, 59, 33 A. 491 (1895). Although we have decided earlier in this opinion that the remedies for past due taxes — tax sale-redemption foreclosure and suit of assumpsit — are alternative courses of action available to the county, it does not follow that the holding of a tax sale necessarily bars the pursuit to judgment of an assumpsit action. The law is now well settled in this State that the "mere initiation of a suit, prior to it becoming a final judgment, does not constitute an election which would bar either an amended claim from being filed in the same action or a totally different remedy in an independent action." *Cook v. Alexandria Bank,* 263 Md. 147, 150, 282 A.2d 97, 99 (1971). The tax sale-redemption foreclosure proceeding here has not been terminated (if, for election of remedy purposes, it even had begun), since a final decree vesting "an absolute and indefeasible title in fee simple" in Prince George's County to the property has not yet been entered. Furthermore, the remedies involved here are not inconsistent, but merely cumulative, as our decision in *Mayor, &c. of Balt. v. Howard, supra,* quoted above, clearly indicates. Thus, we hold that the "election of remedies doctrine" is not a bar to the present litigation.

Accordingly, we affirm the judgment of the Circuit Court for Prince George's County.

*Judgment affirmed.*
*Costs to be paid by the appellant.*