**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1988**

NCO FINANCIAL SYSTEMS, INC., now known as EGS Financial Care, Inc.,

Plaintiff - Appellee,

v.

MONTGOMERY PARK, LLC,

Defendant - Appellant.

**No. 15-2071**

NCO FINANCIAL SYSTEMS, INC., now known as EGS Financial Care, Inc.,

Plaintiff - Appellant,

v.

MONTGOMERY PARK, LLC,

Defendant - Appellee.

Appeals from the United States District Court for the District of Maryland, at Baltimore.  George L. Russell, III, District Judge.  (1:11-cv-01020-GLR)

Argued: September 21, 2016          Decided: November 29, 2016

Before GREGORY, Chief Judge, and NIEMEYER and HARRIS, Circuit Judges.

———————

Affirmed in part, reversed in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

———————

**ARGUED:** Howard G. Goldberg, GOLDBERG & BANKS, P.C., Baltimore, Maryland, for Appellant/Cross-Appellee. Andrew David Levy, BROWN GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellee/Cross-Appellant. **ON BRIEF:** John E. McCann, Jr., Ranak K. Jasani, MILES & STOCKBRIDGE P.C., Baltimore, Maryland, for Appellant/Cross-Appellee. Joshua R. Treem, Kevin D. Docherty, BROWN GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellee/Cross-Appellant.

———————

NIEMEYER, Circuit Judge:

This appeal involves disputes between parties to a 12-year commercial lease of office space in Baltimore, Maryland. NCO Financial Systems, Inc., the lessee, contends that it properly exercised a right of early termination of the lease and that, during the course of the lease, it was overcharged for rent based on erroneous calculations of the space's square footage. Montgomery Park, LLC, the lessor, contends that NCO failed to satisfy the lease's specific conditions for early termination and that NCO now owes rent for the remainder of the lease term.

The district court concluded that NCO effectively exercised its right to terminate the lease early. It also concluded that NCO was not overcharged or, in any event, that its overcharge claim was barred by Maryland's three-year statute of limitations.

On appeal, we reverse the district court's ruling that NCO effectively exercised the right of early termination, and we affirm its ruling rejecting NCO's overcharge claims. Accordingly, we remand for further proceedings on Montgomery Park's claim that NCO breached the lease agreement in failing to pay rent.

Beginning on March 15, 2003, Montgomery Park leased "approximately 106,267" square feet of office space to NCO in a building located on Washington Park Boulevard in Baltimore, Maryland. The base rent for the first year was $15 per square foot, or $1,594,005 per year, which thereafter would increase as determined by a formula tied to inflation. The rent also included NCO's proportionate share of real estate taxes and operating expenses for the common areas of the building.

The initial term of the lease was 12 years, subject to renewal for an additional 8 years. The lease, however, gave NCO a limited right to terminate the lease after 8 years, provided that NCO gave timely notice and made timely payment of a termination fee. More specifically, the lease provided:

§ 1.05 <u>Limited Right of Early Termination</u>. Tenant shall have a one-time, conditional right to terminate this Lease (the "Termination Right"), effective on that date which is eight years after the Commencement Date (the "Termination Effective Date"), upon Tenant's strict compliance with all of the following requirements: (a) Tenant shall deliver to Landlord (not later than ten (10) months prior to the Termination Effective Date (such notice deadline, the "Termination Notice Deadline")) a written notice (the "Termination Notice") stating that Tenant elects to exercise this Termination Right; and (b) Tenant shall pay to Landlord (50% simultaneously with delivery of the Termination Notice and the remaining 50% balance at least three (3) months prior to the Termination Effective Date), a termination fee (the "Termination Fee") equal to ten (10) times the monthly installment (which will be in effect as of the Termination Effective Date) of Rent (including, without

4

limitation, all Additional Rent on account of Taxes or Operating Expenses).  If (and only if) Tenant both timely delivers the Termination Notice and timely pays the Termination Fee as required above, then the Lease will be terminated effective on the Termination Effective Date. Tenant shall not have the right to terminate this Lease if it fails either timely to deliver the Termination Notice or timely to pay the Termination Fee.

By letter dated May 12, 2010, NCO gave Montgomery Park notice that it was exercising its right of early termination, effective March 15, 2011.  At the same time, it remitted $779,964.15, representing 50% of the termination fee, which § 1.05 of the lease specified was equal to 10 months' rent.

On December 15, 2010, NCO remitted the second payment of the termination fee, but the amount it remitted was only $697,100.55, which was $79,067.70 less than the first payment that it had made the previous May.  NCO explained the discrepancy, stating that it had reduced the termination fee by the amount of a janitorial services credit described elsewhere in the lease.  Under that provision, if NCO elected to hire its own janitorial service in lieu of using Montgomery Park's service for NCO's own leased premises -- as distinct from such services that Montgomery Park provided for the common areas -- Montgomery Park would provide NCO with an annual allowance of up to $1.00 per square foot per year.

Montgomery Park responded to the discrepancy, stating that because NCO had failed to remit the second half of the

5

termination fee on December 15, 2010, it had not satisfied the specified condition for early termination and therefore had not terminated the lease. Montgomery Park stated that it would, upon NCO's acknowledgment of this fact, return to NCO the payments that NCO had made in May and December.

NCO disagreed with Montgomery Park's position, asserting that it had "timely and completely fulfilled all of the requirements set forth in Section 1.05 of the Lease," and it considered the lease properly terminated. Accordingly, it vacated the premises on May 31, 2011, and did not pay rent thereafter. Montgomery Park advised NCO that it considered NCO to be in default of the lease for the failure to pay rent.

In 2010, after NCO had first provided notice of early termination, the parties discussed the alternative possibility of reducing the size of rented space, and, in furtherance of those discussions, Montgomery Park provided NCO with computer-generated drawings of the building containing the leased space. Receipt of those drawings prompted NCO to question the amount of rent that it had been paying under the lease. It disputed the calculation of "usable square feet," which, when multiplied by a factor of 1.12, determined "rentable square feet," the basis for computing the rent. NCO contended that it should have paid rent for only 100,800 rentable square feet instead of "approximately 106,267" rentable square feet, a difference of 5,467 square

6

feet.  To make its claim, NCO relied on standards published by the Building Owners and Managers Association ("BOMA"), which would exclude from "usable square feet" restrooms within NCO's leased space, areas holding mechanical equipment serving NCO's space, a 13-square-foot room holding fire protection equipment, and an elevator lobby used by NCO within its leased space.  NCO also disputed the inclusion in its leased space of a 562-square-foot area called the "Bridge."

NCO commenced this diversity action against Montgomery Park in February 2011, alleging breach of contract, unjust enrichment, and fraud based on the allegation that NCO had been overcharged for rent.  NCO also sought a judgment declaring that the lease had been effectively terminated under the early termination right contained in § 1.05.  Montgomery Park filed a counterclaim, seeking a judgment declaring that the lease was still in effect and demanding contract damages for NCO's failure to pay rent after May 31, 2011.

After the completion of discovery, NCO and Montgomery Park filed cross-motions for partial summary judgment.  NCO sought a partial summary judgment on its claims that the premises did not include the Bridge; that NCO had properly terminated the lease; and that "usable square footage" should be determined according to the standards published by BOMA.  Montgomery Park sought a partial summary judgment dismissing NCO's overcharge claims on

the ground that they were barred under Maryland's three-year statute of limitations.

The district court granted NCO's motion in part, agreeing that the leased premises did not include the Bridge and that NCO had effectively exercised the early termination right. It denied NCO's motion on its overcharge claim, deferring that issue to trial of disputed facts. It also deferred to trial Montgomery Park's motion claiming that NCO's overcharge claim was barred by the applicable statute of limitations.

In granting a partial summary judgment to NCO on the early termination issue, the court concluded, as a matter of law, that the janitorial allowance claimed by NCO was not a credit properly applied against the early termination fee because it was not a component of rent that defined the fee. Therefore, NCO's deduction of the allowance from the termination fee was improper. Nonetheless, the court found that NCO had properly exercised its early termination option. Even though the court recognized that the words of the early termination provision "clearly and unambiguously provide[d]" that exercising the option required "strict compliance with specified conditions precedent," it determined that the payment amount required was not a condition but instead a "non-material covenant" that did not need to be strictly satisfied. The court reasoned that, while parts of the lease made full payment of the termination

8

fee a condition, other phrases were less clear. At bottom it held that it would be unreasonable to require NCO to correctly calculate the termination fee in order to exercise its early termination right.

Following a bench trial on the overcharge claim, the court held that "usable square feet" included the square footage of internal restrooms, the area holding mechanical equipment, the room holding fire protection, and the elevator lobby. The court reasoned that the word "usable" was not ambiguous in the context of the lease, and it accordingly applied the normal meaning of that term, finding that NCO had exclusively possessed and used the areas that BOMA would, if applied, have deemed unusable. Additionally, the court found that NCO had had inquiry notice of its overcharge claim for more than three years before it commenced this action, such that its claim was barred by Maryland's three-year statute of limitations. The court thus dismissed NCO's overcharge claim by judgment dated August 19, 2015.

Montgomery Park filed this appeal, contending that the district court erred in concluding that NCO had effectively terminated the lease under the early termination provision, and NCO filed a cross-appeal, challenging the district court's denial of its overcharge claim.

9

With respect to Montgomery Park's appeal, both parties accept the district court's conclusion that the lease's early termination provision required NCO to provide timely notice and to pay in two equal payments a termination fee equal to 10 months' rent. Both parties also accept the district court's conclusion that, although NCO gave timely notice and made its first payment in the correct amount, NCO failed to make the second of these equal payments in the correct amount because it improperly deducted $79,067.70 for a janitorial services credit. Montgomery Park, however, challenges the court's conclusion that NCO had nonetheless exercised its right of early termination on the reasoning that, under the lease, payment in the correct amount was a covenant with which strict compliance was not required. Montgomery Park contends that payment in full was an express condition of the option's exercise and NCO's attempt to terminate early was therefore ineffective. It argues that the district court's contrary interpretation, based on its conclusion that the correct amount of the termination fee was not part of the condition for early termination but merely a non-material covenant, ignored the plain language of the early termination provision and violated key principles of contract construction under Maryland law.

NCO contends that the district court "correctly analyzed the language of the lease to conclude that matching precisely Montgomery Park's calculation of the termination fee was not a condition precedent to NCO's exercise of its option." Relying on Beckenheimer's Inc. v. Alameda Associates Limited Partnership, 611 A.2d 105 (Md. 1992), it asserts that the inadequate payment of the termination fee was a breach of a covenant, not the failure to satisfy a condition, and that the district court therefore properly applied principles of equity to conclude that NCO effectively terminated the lease early under § 1.05, even though it did not pay the full early termination fee.

Under Maryland law, which applies in this diversity case, when the terms of an option impose conditions on its exercise, those conditions must be exactly matched for exercise to be effective. See Elderkin v. Carroll, 941 A.2d 1127, 1133 (Md. 2008). In determining whether an option has been exercised, the Elderkin court articulated a three-part test to be applied. Id. at 1135. First, a court must evaluate whether the exercise exactly matched the terms specified by the offer. Second, if the match is not exact, the court must consider whether any variance is covered by a number of highly specific exceptions, none of which applies to the present case. Finally, the court must determine whether any breach was of a covenant or of a

11

condition.  Id.  The determination of whether requirements for exercising an option are conditions or covenants is a question "of construction dependent on the intent of the parties to be gathered from the words they have employed."  Chesapeake Bank of Md. v. Monro Muffler/Brake, Inc., 891 A.2d 384, 391 (Md. Ct. Spec. App. 2006) (quoting Chirichella v. Erwin, 310 A.2d 555 (Md. 1973)).  The Chesapeake Bank court noted that conditions are indicated by words and phrases such as "if," "provided that," and "when."  Id.

Applying these principles to the lease before us, the language could hardly be more clear that § 1.05 reveals an intent to impose two conditions on the exercise of the right of early termination: (1) that the lessee give 10 months' notice prior to the specified early termination date; and (2) that the lessee make payment -- in two equal installments -- of a "termination fee" defined to equal 10 months' rent.  As § 1.05 states, the right to early termination can be exercised only "upon strict compliance" with the two requirements.  And the lease then uses language indicative of a condition when describing how early termination can be effected.  The lease states that termination will be effective "[i]f (and only if) Tenant both timely delivers the Termination Notice and timely pays the Termination Fee as required above."  (Emphasis added). And thereafter, it makes unmistakably clear that the lease is

12

imposing conditions by stating the obverse -- that early termination is not exercised "if [Tenant] fails either timely to deliver the Termination Notice or timely to pay the Termination Fee." (Emphasis added). Applying Maryland law, which provides that the use of the word "if" is indicative of a condition, we therefore conclude that § 1.05 of the lease imposes conditions, as it uses "if" three different times when referring to the two requirements and, on one of those occasions, uses "if" with "only if" to emphasize the conditional nature of the requirements.

In short, we conclude that the lease unambiguously imposes two conditions on NCO's exercise of its right of early termination -- timely notice and timely payment of the termination fee. Because NCO undisputedly failed to make full payment of the termination fee, it did not satisfy those conditions and therefore did not successfully exercise the right of early termination.

The district court expressed a concern that reading the requirement of full payment as a condition to early termination would be potentially unreasonable as it would require NCO to properly calculate the termination fee. Following this vein, NCO argues that it satisfied the requirement of payment even though it did so in the wrong amount, because paying the proper amount was not part of the condition. It asserts that because

13

the calculation of the termination fee could be difficult, any inadequate payment, regardless of its cause, must therefore be excused as the failure to satisfy a covenant, not treated as the failure to satisfy the condition. The flaw in this argument is its underlying assumption that the calculation of the amount of the termination fee was somehow at issue. But it never was. When NCO paid the first 50% installment, it remitted $779,964.15, and Montgomery Park never expressed any reservation or disagreement with the accuracy of that amount. Similarly, the second installment differed only because NCO made the decision, as it explained, to set off against that amount the janitorial services credit, as if it were rendering an account, not paying a specifically defined fee. It thus reduced the second installment to $697,100.55, contrary to the condition that required payment of the defined fee in equal parts. Because NCO's underpayment derived not from any miscalculation but from NCO's deliberate decision to offset an unrelated payment, any concerns about the posited difficulty of calculation are irrelevant.

In sum, the clear and unambiguous language of the lease agreement made payment in full of the termination fee a condition, and NCO failed to satisfy it.

14

Because NCO failed effectively to exercise its right of early termination, the lease continued in force after March 15, 2011, and Montgomery Park is thus entitled to pursue its counterclaim against NCO for breach of the lease agreement for failing to pay rent. In response to this conclusion, NCO argues that Montgomery Park's claim for rent should be barred by the equitable doctrine of election of remedies because, after the district court found that NCO had properly exercised its early termination option, Montgomery Park pursued the unpaid balance of the termination fee, rather than refusing that remedy in the hope that a favorable holding on appeal would enable it to pursue the unpaid rent.

The doctrine of election of remedies, however, has no application here because Montgomery Park did not have multiple remedies available from which to choose when it pursued the balance of the termination fee. To interpret the doctrine as NCO urges would force claimants to forego the only remedy made available to them by the court in hopes of obtaining a favorable result on appeal. This harsh interpretation is inconsistent with Maryland law.

Maryland law recognizes that "[t]he doctrine of election of remedies is quite technical and should not be lightly employed by a court." <u>Surratts Assocs. v. Prince George's Cnty</u>, 408 A.2d

15

1323, 1330 (Md. 1979). Moreover, the doctrine is available only "where there are two or more coexistent remedies available to the litigant at the time of election which are repugnant and inconsistent." Shoreham Developers, Inc. v. Randolph Hills, Inc., 305 A.2d 465, 472 (Md. 1973) (emphasis added) (quoting 25 Am. Jur. 2d, Election of Remedies §§ 10-12 (1966)).

In this case, when Montgomery Park pursued the balance of the termination fee, the district court had already found that NCO had validly exercised its right to terminate the lease early. At that point, Montgomery Park had no remedy other than claiming the balance of the termination fee that NCO had failed to remit. Because Montgomery Park did not have two or more coexistent remedies from which to make an election, the doctrine has no applicability.

IV

In its counterclaim, NCO contends that Montgomery Park misrepresented or misstated in the lease the usable-square-footage portion of the total space for which NCO paid rent. The lease used 94,881 as the number of "usable square feet" and then applied to that number a factor of 1.12 to calculate the "rentable square feet" of 106,267 square feet. The rentable square footage was then used to determine the rent. NCO argues that 94,881 overstated the usable square footage of the premises

16

because it included internal restrooms, areas holding mechanical equipment serving NCO space, a room holding fire protection equipment, and the elevator lobby used by NCO within its offices. NCO argues that those areas should not have been included in the total number of usable square feet, as they were not "usable" under standards published by the Building Owners and Managers Association or BOMA. When those areas are excluded from "usable square feet," NCO contends, the "rentable square footage" becomes 100,800, instead of the leases' provision of "approximately 106,267," a difference of 5,467 square feet. In furtherance of this argument, NCO introduced at trial parol evidence from several witnesses who testified that they understood the lease to be measuring "usable square feet" under the standards published by BOMA.

Even though the district court heard the parol evidence at trial, it did not apply the BOMA standards to define "usable" because it found that the term "usable," "in the context of the agreement, [was] unambiguous," and therefore it could not use parol evidence to overcome the unambiguous contract terms. See Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC, 829 A.2d 540, 544 (Md. 2003). In addition, the court noted that the lease's integration clause suggested that the parties were not relying on a technical meaning not defined in the lease. The court concluded, "using its own common sense and everyday

17

experience as a finder of fact[,] . . . that the term 'usable' means to use, occupy, or possess." And when it applied that meaning to the facts, it found that NCO "certainly possessed and occupied and used exclusively the bathroom areas, the mezzanine area, and as well the valve room." In addition, it noted that NCO's use and possession of the bathrooms was further evidenced by NCO's taking over the janitorial services for the bathroom areas of which it had exclusive use.

We conclude that the district court did not err in its construction of the lease and that its finding that the disputed areas were used and possessed exclusively by NCO was not clearly erroneous. When these disputed areas are included in the usable square feet, as the court concluded, the lease did not misrepresent or misstate that the premises constituted "approximately 106,267" rentable square feet.*

NCO argues that this conclusion is erroneous because it ignores the parol evidence NCO offered to show that BOMA should be consulted to supply the meaning of "usable" in the lease.

---

* NCO also argues that the inclusion of some 562 square feet for the area called the Bridge was improper. The district court agreed, ruling that the Bridge's square footage should not have been included in the definition of the leased premises. But the court also ruled that in the context of a 106,000-square-foot premises, the Bridge area was not material, especially in light of the lease's use of "approximately 106,267" square feet, as well as the testimony of NCO's witnesses that 562 square feet was not material. We agree with the district court's ruling.

18

This argument, however, misunderstands the court's position on that evidence. The district court, in fact, received the parol evidence as to the BOMA standards during trial but concluded not to use it in light of the court's conclusion that the term "usable" was unambiguous. This was not error. See Sy-Lene, 829 A.2d at 544.

At bottom, we conclude that the district court did not err in concluding that NCO was properly charged for "approximately 106,267" square feet. In reaching this conclusion, we do not address NCO's claim that the district court erred in applying Maryland's three-year statute of limitations as an alternative basis for denying NCO's overcharge claim.

* * *

For the reasons given, we reverse the district court's ruling that NCO satisfied the lease's conditions for early termination; we affirm its ruling rejecting NCO's overcharge claims; and we remand for further proceedings on Montgomery Park's claim that NCO breached the lease agreement by failing to pay rent after May 31, 2011.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

19