**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2226

NCO FINANCIAL SYSTEMS, INCORPORATED, now known as EGS Financial Care, Inc.,

Plaintiff - Appellee,

v.

MONTGOMERY PARK, LLC,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge. (1:11-cv-01020-GLR)

Argued: November 1, 2018                    Decided: March 15, 2019
Amended: March 15, 2019

Before GREGORY, Chief Judge, and NIEMEYER and HARRIS, Circuit Judges.

Vacated and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

**ARGUED:** Howard G. Goldberg, GOLDBERG & BANKS, PC, Baltimore, Maryland, for Appellant. Andrew D. Levy, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:** Joshua R. Treem, Kevin D. Docherty, Anthony J. May, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellee.

NIEMEYER, Circuit Judge:

This case, which involves disputes between parties to a 12-year commercial lease of office space in Baltimore, Maryland, comes to us for a second time. In the prior appeal, we held that NCO Financial Systems, Inc. (the lessee) had failed to properly exercise its right of early termination of the lease agreement between it and Montgomery Park, LLC (the lessor) and had, by failing to pay rent thereafter, breached the agreement. *NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 842 F.3d 816, 821–23 (4th Cir. 2016). Accordingly, we remanded the case for further proceedings on Montgomery Park's claim for damages.

On remand, the district court conducted a bench trial at which it received evidence regarding Montgomery Park's damages and whether Montgomery Park had, as required by the lease agreement, used "reasonable commercial efforts" to mitigate its damages. The court concluded that Montgomery Park failed to use reasonable commercial efforts to mitigate its damages and that this failure was a condition precedent to any damage recovery. It therefore denied Montgomery Park any damages for NCO's breach.

On appeal, Montgomery Park contends that the district court erred (1) by concluding that the obligation to mitigate damages was a condition precedent to the recovery of any damages and therefore that the failure to satisfy that condition *completely* barred recovery, rather than merely *reduced* the amount of recoverable damages, and (2) by concluding that Montgomery Park's obligation to mitigate damages meant that it "was under a contractual duty to give special care and attention" to the space previously

2

leased by NCO and therefore that marketing efforts directed at leasing all vacant spaces in the building were largely irrelevant.

We agree with Montgomery Park on both points and therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion. *First*, we conclude that the district court misconstrued the lease agreement and misapplied Maryland law in concluding that Montgomery Park had a duty to "endeavor to re-let the premises and minimize [its] damages *as a condition precedent* to recovering" against NCO. (Emphasis added). Because the lease agreement's language incorporated the common law mitigation-of-damages doctrine, which holds that a plaintiff cannot recover damages which it could have reasonably avoided, Montgomery Park's recovery should only have been *reduced* by the amount of rent that NCO could demonstrate would have been recovered by reasonable efforts to re-let the space. *Second*, we conclude that the district court, in evaluating the commercial reasonableness of Montgomery Park's mitigation efforts, applied the wrong standard. Reasonable commercial efforts to mitigate damages did not require Montgomery Park to favor NCO's space over other vacant space in the building. Rather, commercial reasonableness only required Montgomery Park to reasonably market NCO's space on an equal footing with the other spaces that it was seeking to rent.

I

Beginning on March 15, 2003, Montgomery Park leased over 100,000 square feet of office space to NCO in a building located on Washington Park Boulevard in

3

Baltimore, Maryland. The initial term of the lease was 12 years, but NCO had a limited right to terminate the lease after 8 years, provided that it gave timely notice and made timely payment of a termination fee equal to 10 months' rent.

In the prior appeal in this case, we concluded that while NCO manifested its intent to exercise the early termination option, it failed to satisfy the lease agreement's conditions precedent for doing so. We therefore held that NCO had a continuing obligation to pay rent, even though it had vacated the premises. Thus, we remanded the case to the district court for further proceedings on Montgomery Park's claim for damages. *See NCO Fin. Sys.*, 842 F.3d at 822–25.

On remand, the district court conducted a bench trial on damages, at which it considered whether Montgomery Park had used "reasonable commercial efforts" to mitigate its damages, as required in § 14.03 of the lease agreement. That section, entitled "Remedies," authorized Montgomery Park to re-let the NCO premises once NCO breached the lease and vacated the building. It provided further:

> Landlord shall not be liable for, nor shall Tenant's obligations hereunder be diminished by reason of, any failure by Landlord to relet the Premises or any failure by Landlord to collect any rent due upon such reletting, *but Landlord does agree to use reasonable commercial efforts to mitigate damages caused by any Event of Default or if Tenant shall surrender the Premises back to Landlord for such purpose.* No action taken by the Landlord under the provisions of this section shall operate as a waiver of any right which the Landlord would otherwise have against the Tenant for the Rent hereby reserved or otherwise, and the Tenant shall at all times remain responsible to the Landlord for any loss and/or damage suffered by the Landlord by reason of any Event of Default, provided that in no event shall Tenant be liable for consequential damages . . . .

4

(Emphasis added). After concluding that this provision required Montgomery Park to take commercially reasonable steps to re-let the NCO space "from the date that NCO vacated the property," the court found that Montgomery Park had not used reasonable commercial efforts to find a replacement tenant for the NCO space. In articulating the standard that it applied, the court stated that "if you had the real estate space that you need to lease, reasonable efforts require that you advertise it and promote it *specifically and not generally as part of an overall scheme to fill a larger vacant space*." (Emphasis added). The court concluded that Montgomery Park had failed to target its efforts, emphasizing that although Montgomery Park had taken substantial steps to market the building *as a whole* — which included NCO's space — it had done much less to market the NCO space specifically:

> Montgomery Park . . . engaged in significant effort, including the creation of brochures; hanging banners; engaging with prospective tenants; conducting tours of the premises, including several tours of the NCO space; and holding meetings regarding leasing the Montgomery space in general. *But these efforts were designed only to market Montgomery Park space as a whole, with no serious effort to target or re-lease NCO space, as they were obligated to do.*

(Emphasis added). The court added that Montgomery Park's monthly marketing meetings "were never geared . . . to treat the NCO premises any different than any other premises within the Montgomery Park property" and that Montgomery Park's marketing reports, which had been admitted into evidence, "shed little, if any, light on a plan to specifically market the NCO premises." The court also dismissed the instances where Montgomery Park offered the NCO space to prospective tenants, citing the fact that

5

Montgomery Park had, among other things, also offered those prospects alternative spaces:

> The prospects identified by Montgomery Park as being interested in the NCO premises . . . were offered space either while NCO still occupied the premises; were offered premises other than the NCO premises; when offered the NCO premises, the NCO premises was listed as an alternative space, a last alternative space for leasing, or almost last alternative space for leasing, or the offer failed to provide any benefit or provided little benefit to NCO regarding its rental obligations because the offer included free rent. As a result, such efforts did not meet the commercial reasonable efforts required under the lease or by industry standard.

In short, under the standard that the district court applied, "Montgomery Park was under a contractual duty to give special care and attention to NCO," and thus generalized efforts directed at leasing the building as a whole were insufficient.

The district court also took issue with Montgomery Park's lack of a formalized marketing plan, noting that "[n]o written marketing plan was ever created related to the NCO space or to Montgomery Park, the property, in general." The court reasoned that:

> [A]s part of its obligation to exercise reasonable commercial efforts, [Montgomery Park] was required by contract or by industry standards to put a written marketing plan in place given the challenges of the particular property. This marketing plan would include an evaluation of the NCO space, a list of prospects for the NCO space, specific timetables and goals for re-listing the NCO space, and methods of advertising the NCO space.

The court accordingly concluded that "the failure to create a marketing plan for the NCO premises was commercially unreasonable at the outset of the vacancy."

Further, the court pointed out that Montgomery Park failed to update its "CoStar" listing to reflect the vacancy of the NCO premises. CoStar is an online database used by real estate brokers and owners to list available commercial properties and is considered to

6

be "the leading provider of commercial real estate information and data" in the United States. Montgomery Park maintained an active CoStar listing but, after NCO vacated the property, it did not update the listing to reflect the change, meaning that the listing continued to show the NCO premises as occupied. The district court concluded that "the failure to advertise the NCO premises as available on CoStar was intentional" and that such failure was motivated by Montgomery Park's "concern[] that listing an additional 100,000 square feet as being available on CoStar . . . would lead to a bad impression of the building, thus stagnating leasing opportunities." The court noted that to address this concern "Montgomery Park . . . could have [instead] listed the NCO premises as available and simply made space that had been deemed available for leasing unavailable."

Finally, the court found that Montgomery Park made no significant efforts to subdivide the NCO space, concluding that "Montgomery Park failed to conduct a cost-benefit analysis of subdividing the space to determine whether such mitigation was even practical" and that "the failure to create such an analysis was . . . commercially unreasonable."

Having concluded that Montgomery Park failed to use commercially reasonable efforts to re-let the NCO space, the district court then held that such failure precluded Montgomery Park from recovering *any damages whatsoever*. The court reasoned that "if a tenant has abandoned the leased premises and there is a breach of contract action for damages, like in this case, the landlord must endeavor to re-let and minimize his damages *as a condition precedent* to recovering against the original tenant." (Emphasis added)

(citing *Circuit City Stores, Inc. v. Rockville Pike Joint Venture Ltd. P'ship*, 829 A.2d 976 (Md. 2003)). Thus, the court reasoned, "from and after the time that the landlord breached its contractual obligations to mitigate damages, the landlord is entitled to no further payment from the tenant." It concluded that "[b]ecause . . . Montgomery Park breached the lease from the date that NCO vacated the property due to [its] failure to use reasonable commercial efforts to [re-let] the NCO premises, . . . Montgomery Park is not entitled to any damages."

From the district court's judgment dated October 11, 2017, Montgomery Park filed this appeal.


II

Montgomery Park contends that the requirement in the lease agreement that it use reasonable commercial efforts to mitigate damages is not, as the district court held, "a condition precedent to [its right] to recover its lost rent due to [NCO's] default" and that the district court accordingly erred in treating it as such. In support of its position, Montgomery Park contrasts the language at issue here with the language we addressed in the prior appeal, noting that the "language employed with regard to [its] obligation to use reasonable commercial efforts contains no language similar to the conditional language employed with regard to the early termination provision." Rather than imposing a condition precedent to any recovery, Montgomery Park argues that the lease agreement incorporated the mitigation-of-damages doctrine, as that doctrine has been applied under Maryland contract law. And proper application of that doctrine here would require NCO

8

to "prove the net loss resulting from Montgomery Park's failure to [mitigate damages]" and the district court then to reduce recovery by that amount. In short, Montgomery Park argues that the district court erred by foreclosing recovery altogether.

NCO amplifies the district court's position, contending that when both parties to a contract breach their obligations, courts should decline to award any contract damages. It argues that:

> [U]nder both Maryland law and general contract law, courts have held that in some instances where both parties are at fault (or in default) neither may recover. . . . Whether this doctrine is described as *failure of consideration*, *failure to satisfy a condition precedent*, or *mutual breach of contract*, it is clear that in proper circumstances a court may refuse to allow recovery by either party to an agreement because of their mutual fault, which in contract terms might be more properly described as mutual default.

(quoting *Westinghouse Elec. Corp. v. Garrett Corp.*, 601 F.2d 155, 158 (4th Cir. 1979) (citations omitted) (emphasis added)). NCO maintains that Montgomery Park's failure to mitigate damages — whether labeled a mutual breach, a failure to satisfy a condition precedent, or a failure of consideration — bars Montgomery Park from recovering any damages whatsoever.

We agree with Montgomery Park's reading of the lease agreement and its application of Maryland law. First, the lease agreement itself clearly does not make the obligation to mitigate damages a condition precedent to recovery for breach of the agreement. To the contrary, the relevant portion of the lease provides:

> *Landlord shall not be liable for, nor shall Tenant's obligations hereunder be diminished by reason of, any failure by Landlord to relet the Premises* or any failure by Landlord to collect any rent due upon such reletting, but Landlord does agree to use reasonable commercial efforts to mitigate damages caused by any Event of Default or if Tenant shall surrender the

9

Premises back to Landlord for such purpose. *No action taken by the Landlord under the provisions of this section shall operate as a waiver of any right which the Landlord would otherwise have against the Tenant for the Rent hereby reserved or otherwise, and the Tenant shall at all times remain responsible to the Landlord for any loss and/or damage suffered by the Landlord by reason of any Event of Default*, provided that in no event shall Tenant be liable for consequential damages . . . .

(Emphasis added). Far from imposing a condition precedent to Montgomery Park's recovery of damages, this provision makes clear that NCO "shall at all times remain responsible" for any loss suffered due to its breach of the agreement and states further that "[n]o action taken by [Montgomery Park] under the provisions of this section shall operate as a waiver of any right [Montgomery Park] would otherwise have against [NCO]." Moreover, the language of this provision is totally unlike that of the provision construed in the first appeal, where we concluded that the language imposed a condition precedent to early termination. The provision in the first appeal imposed conditions to early termination that were subject to "strict compliance" such that early termination would be effective "if and only if" the conditions were met. *NCO Fin. Sys.*, 842 F.3d at 822.

We also agree with Montgomery Park that its lease obligation to "use reasonable commercial efforts to mitigate damages caused by any Event of Default" must be read as incorporating the mitigation-of-damages doctrine. This doctrine, which is rooted in the "avoidable consequences" rule of contract damages, applies *only after a breach has already occurred* and functions to decrease a plaintiff's recovery for that breach. In this respect, the "duty" to mitigate damages is not one of the mutual duties going to the

10

essence and nature of the contract. As the Maryland Court of Special Appeals has explained:

> The doctrine of minimization of damages is not a defense to a plaintiff's cause of action, whether that cause of action be one based in negligence or contract; rather, it is a "disability on (or a 'no right' to) recovery of reasonably avoidable damages." The doctrine serves to reduce the amount of damages to which a plaintiff might otherwise have been entitled had he or she used all reasonable efforts to minimize the loss he or she sustained as a result of a breach of duty by the defendant. . . . Thus, it is clear that the doctrine does not place any duty on a plaintiff or create an affirmative right in anyone. . . . *[I]n order for the doctrine of minimization of damages to apply, there must first have been a breach of duty on the part of the defendant, who then raises an issue as to the propriety of the losses or damages claimed by the plaintiff.*

*Schlossberg v. Epstein*, 534 A.2d 1003, 1006–07 (Md. Ct. Spec. App. 1988) (emphasis added) (citations omitted).

NCO's argument that a mitigation obligation implicates the doctrine of "mutual breach" is simply off the mark. The central, bargained-for mutual rights and duties of the lease agreement arose from (1) Montgomery Park's agreement to provide NCO with functional commercial office space and (2) NCO's agreement to timely pay rent for the space. Accordingly, once NCO failed to pay rent, it was in breach of the contract and Montgomery Park was entitled to contract damages against it. To the extent Montgomery Park owed NCO a "duty" to mitigate damages, therefore, the duty arose only *after and because of* NCO's breach and became relevant only when Montgomery Park sought contract damages from NCO. As such, treating Montgomery Park's alleged failure to mitigate damages as a typical breach of contract — and thus as a potential ground for

11

"mutual breach" — fundamentally misconstrues contract law and a landlord's duty to mitigate damages resulting from a tenant's breach.

The principal case relied on by NCO and the district court, *Circuit City*, does not hold to the contrary. *Circuit City* concerned a landlord that, in order to attract a new tenant following a prior tenant's breach of its lease agreement, permitted a commercial property to be demolished. 829 A.2d at 977. The Maryland Court of Appeals remanded the case to the trial court for a determination of whether that arrangement was "reasonable," instructing that if the lower court were to determine that it was *not* reasonable, the court could, "on that basis, conclude that [the landlord] breached its contractual obligation to mitigate damages and that, from and after the time of that breach" — *i.e.*, from and after the time the property was demolished and thus could no longer be re-let — the landlord "was entitled to no further payments." *Id.* at 991. In so holding, the Court of Appeals noted:

> [W]hether seeking to recover rent under property covenants on the theory that a surrender has not occurred or to recover contract damages under contract law, the landlord has its own obligation to mitigate damages. We have recognized generally that, when one party breaches a contract, the other party is required by the "avoidable consequences" rule of damages to make all reasonable efforts to minimize the loss sustained from the breach and can charge the defaulting party only with such damages as, with reasonable endeavors and expense and without risk of additional substantial loss or injury, he could not prevent.

*Id.* at 990 (internal quotation marks and citation omitted). Thus, contrary to NCO's and the district court's reading, *Circuit City* stands for the well-established proposition that a failure to mitigate damages may *decrease* the amount of recoverable damages but does not *necessarily* preclude recovery of damages altogether. Of course, if the evidence

12

shows that the lessor, with reasonable efforts, could have recovered all of the rent owed by the lessee, there would be no recovery of unpaid rent. But that conclusion can be reached only by determining the amount that the lessor could have obtained with reasonable efforts and then setting off that amount against the rent owed.

Thus, to apply the mitigation-of-damages doctrine correctly, the district court should have required NCO to prove how much, if any, additional rent Montgomery Park could have collected by exercising reasonable commercial efforts to re-let the NCO space and then decreased Montgomery Park's contract damages by that amount. Because the district court did not engage in this analysis, we remand for further proceedings.

III

Montgomery Park also contends that the district court applied the wrong standard when evaluating the commercial reasonableness of the efforts to re-let the NCO space, asserting that the court wrongly "believed the NCO [p]remises must be given *preferred treatment* over all other vacant space" in the same building. (Emphasis added). It argues that, as a result of this error, the district court "ignored" relevant evidence of commercial reasonableness regarding marketing efforts directed at the building as a whole.

At trial, the district court applied a reasonableness standard that required Montgomery Park to show that it favored the NCO space in its marketing efforts, stating that "Montgomery Park was under a contractual duty to give special care and attention to NCO" and that although "Montgomery Park . . . engaged in significant effort[s]," "these efforts were designed only to market Montgomery Park space as a whole, with no serious

13

effort to target or [re-let] NCO space, as they were obligated to do." Indeed, at times the court seemed to view the relevant inquiry as what a hypothetical landlord of *solely* the NCO premises should have done. Under this standard, Montgomery Park became obligated to develop a unique, preferred plan for leasing the NCO space and then to market that space at the expense of its other vacant spaces, despite the fact that *it was NCO who breached the lease*. In the same vein, the court seemed to adopt a standard that would require the victim of the breach to sacrifice other opportunities to favor the breaching party — suggesting that Montgomery Park "could have listed the NCO premises as available and simply made space that had been deemed available for leasing unavailable."

As Montgomery Park rightly points out, however, a landlord's obligation to mitigate damages does not require that it favor the vacated space or otherwise drastically alter its business plan. *See Circuit City*, 829 A.2d at 990. Rather, Montgomery Park's duty to mitigate damages merely required that it act reasonably to re-let the NCO space *under the circumstances*, with "the circumstances" including the fact that the NCO space was but one of a number of vacant spaces that Montgomery Park had available in the building. As such, the duty to mitigate damages mandated only that Montgomery Park act reasonably to market the NCO space on an equal footing with its other vacant spaces. Of course, Montgomery Park was not entitled to sit on its hands and take advantage of the fact that NCO had a continuing obligation to pay rent, but neither was it required to single out the NCO space for special treatment to the detriment of its other business opportunities.

14

We offer no view on whether Montgomery Park satisfied this standard. Montgomery Park's generalized marketing efforts — which the district court recognized as "significant" — suggest that it may have. But other of Montgomery Park's actions, particularly its failure to update its CoStar listing, might suggest otherwise. On remand, the district court should consider all the relevant evidence, including evidence concerning Montgomery Park's generalized marketing efforts, to determine whether Montgomery Park's efforts were reasonable and impose on NCO the burden to quantify the consequence of any failure to mitigate that it is able to prove.

IV

Finally, Montgomery Park challenges the district court's admission of certain expert testimony. Such rulings, however, are entitled to great deference and are subject to review only for abuse of discretion. *See United States v. Fuertes*, 805 F.3d 485, 495–96 (4th Cir. 2015); *Noel v. Artson*, 641 F.3d 580, 591 (4th Cir. 2011) ("[W]e will only overturn an evidentiary ruling that is arbitrary and irrational" (internal quotation marks and citation omitted)). We conclude that the district court did not abuse its discretion.

\*       \*       \*

For the reasons given, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

15