**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-1294**

───────────

NCO FINANCIAL SYSTEMS, INC.,

Plaintiff - Appellant,

v.

MONTGOMERY PARK, LLC,

Defendant - Appellee.

───────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, Chief District Judge. (1:11-cv-01020-GLR)

───────────

Argued: January 30, 2025                    Decided: April 14, 2025

───────────

Before NIEMEYER, GREGORY, and HARRIS, Circuit Judges.

───────────

Affirmed in part, vacated in part and remanded with instructions by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Harris joined.

───────────

Stephen W. Nichols, OFFIT KURMAN, PA, Bethesda, Maryland, for Appellant. Howard G. Goldberg, GOLDBERG & BANKS, P.C., Baltimore, Maryland; John Edward McCann, Jr., MILES & STOCKBRIDGE P.C., Baltimore, Maryland, for Appellee.

NIEMEYER, Circuit Judge:

This Dickensian litigation, begun in early 2011, prosecuted for over 14 years, and now presented to us for the fifth time,[*] may finally be coming to a close — but not on the will of the attorneys involved.  It arose from a dispute over a commercial lease for about 100,000 square feet of office space in Baltimore, Maryland.  The issues presented here, which we trust will be the final ones — so as not to compete with the absurdity of *Bleak House*'s "Jarndyce and Jarndyce" — involve the district court's award of roughly $3.8 million to Montgomery Park, LLC, for the costs, fees, and expenses, including attorneys fees, that it incurred in pursuing its remedies.

The lessee NCO Financial Systems, Inc., challenges the award, contending (1) that Montgomery Park never made a demand for the payment of the costs, fees, and expenses, as the lease required; (2) that fees incurred by Montgomery Park *in defending against* NCO's initial suit should not have been included in the award; and (3) that expert fees should not have been included in the award.

In connection with the first issue, we conclude that Montgomery Park clearly made a demand for payment when it filed its motion seeking reimbursement for costs, fees, and

---

[*]  Initially, we denied Montgomery Park's request to file an interlocutory appeal, No. 14-274 (4th Cir. July 7, 2014).  And thereafter, we issued three opinions in this case: *NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 842 F.3d 816 (4th Cir. 2016) (holding that NCO failed to satisfy the conditions necessary for early termination of the lease); *NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 918 F.3d 388 (4th Cir. 2019) (holding that Montgomery Park's obligation to mitigate damages was not a condition precedent to awarding damages); *NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 40 F.4th 123 (4th Cir. 2022) (affirming district court's finding that Montgomery Park's efforts to mitigate damages were commercially reasonable).

2

expenses. In so concluding, we clarify that default interest should run only from the date of demand, not from the dates when the costs, fees, and expenses were incurred. The default interest therefore must be recalculated. In connection with the other issues, we affirm. Accordingly, we vacate the interest portion of the judgment and remand with instructions to recalculate interest and enter a revised judgment.

## I

On October 8, 2002, Montgomery Park, as lessor, and NCO, as lessee, entered into a lease agreement for over 100,000 square feet of space in a large commercial building on Washington Boulevard in Baltimore, Maryland. While the initial term of the lease was for 12 years, beginning March 15, 2003, the lease gave NCO the right to terminate the lease after 8 years if it satisfied specified conditions. NCO sought to exercise the right of early termination, but Montgomery Park claimed that it did not satisfy the specified conditions. Despite Montgomery Park's notice to NCO that it had not fulfilled the conditions for early termination, NCO vacated the leased property on May 31, 2011, refusing to pay any further rent. After NCO vacated the premises, Montgomery Park sent it a default letter dated July 13, 2011, stating:

> This letter shall constitute notice of NCO's default . . . due to NCO's failure to pay when due the sum of $313,662.76 . . . . If the foregoing sum due under the Lease is not paid to Montgomery Park within five (5) days following NCO's receipt of this letter, Montgomery Park reserves the right to pursue any and all legal or equitable rights or remedies available under the Lease or otherwise available in equity or at law. In addition, please be aware that late fees and interest charges accrue as provided under the Lease.

3

In the context of these disputes, NCO commenced this action in February 2011 against Montgomery Park for a declaratory judgment that it had properly exercised its right to terminate the lease early and that the rent was based on allegedly misrepresented square footage. Montgomery Park filed an answer and counterclaim seeking both a declaratory judgment that the lease was ongoing and a judgment for past due rent. The litigation was contentious and aggressively pursued by both parties. Following a bench trial, the district court found in favor of Montgomery Park, entering judgment against NCO in the amount of $9,854,566.95, plus ongoing postjudgment interest. In its judgment, the court established a schedule for determining Montgomery Park's claim for costs, fees, and expenses, as provided by the lease.

In accordance with the schedule, Montgomery Park filed a motion on August 24, 2022, requesting attorneys fees and nontaxable expenses in the amount of $1,806,786.31; expert fees and expenses in the amount of $157,897.99; and default interest on costs, fees, and expenses in the amount of $1,194,065.76, for a total of $3,158,750.06 "plus any and all additional such fees and expenses and default interest thereon and on its taxable court costs, incurred after the date of this Motion." It relied on Section 14.04 of the lease, which provided that upon default, NCO was required to pay Montgomery Park "all reasonable costs, fees and expenses incurred by Landlord in pursuit of its remedies hereunder including but not limited to attorneys' fees and court costs" together with interest at the "Default Rate." The lease defined the default rate to be 5% above the prime rate of interest, as published in *The Wall Street Journal*, but not to exceed 12% per annum.

4

NCO opposed Montgomery Park's motion, advancing four arguments. First, it contended that Montgomery Park's costs, fees, and expenses became due and payable only upon "demand" and that Montgomery Park had "never made a 'demand' for the requested fees and expenses." Second, it contended that the district court should disallow all of the requested fees and expenses that were incurred prior to November 29, 2016, because Montgomery Park had incurred those fees and expenses "in defense of NCO's fraud and breach of contract claims" and the lease does not support recovery of such fees and expenses. Third, it contended that the court should disallow Montgomery Park's request for an award of expert witness fees. And fourth and finally, it contended that "Montgomery Park's requested fees and expenses should be reduced due to numerous instances of excessive hours, duplicate billing and billing for non-compensable time."

Following extensive briefing and a hearing, the district court orally addressed and rejected NCO's arguments and thereafter entered an order awarding Montgomery Park fees and nontaxable expenses in the amount of $2,074,379.88; taxable costs in the amount of $115,942.10; and default interest in the amount of $1,576,036.07, for a total of $3,766,358.05.

From the district court's order, dated March 4, 2024, NCO filed this appeal.

II

In Section 14.04, the lease between the parties provides:

Upon any Event of Default, Tenant shall remain liable to the Landlord for the following amounts: . . . (c) all reasonable costs, fees and expenses incurred by Landlord in pursuit of its remedies hereunder including but not limited to attorneys' fees and court costs. All such amounts shall be due and

5

> payable immediately upon demand by Landlord . . . and shall bear interest at the Default Rate until paid.

NCO points to the lease language that authorizes Montgomery Park to claim costs, fees, and expenses only upon "demand" and maintains that "[t]here is no evidence in the record that Montgomery Park ever made a 'demand' for the fees and costs." It states, "Quite simply, Montgomery Park never complied with one of the Lease's express prerequisites to recovery of its fees, costs and expenses from NCO" and therefore this failure should result in denying Montgomery Park's fee motion "in its entirety." Alternatively, it contends that the district court erred in awarding default interest on fees, costs, and expenses incurred before demand was made.

Montgomery Park argues that its default letter of July 13, 2011, served as demand, albeit not using the word "demand." That letter stated that "Montgomery Park *reserves* the right to pursue any and all legal or equitable rights or remedies available under the Lease or otherwise available in equity or at law." (Emphasis added). Montgomery Park argues that those remedies included those listed under Section 14.04 for "costs, fees and expenses incurred" in pursuit of remedies.

We agree with NCO that the unambiguous language of the lease imposes on it an obligation to pay costs, fees, and expenses contingent upon a "demand." We also agree that Montgomery Park's July 13, 2011 default letter did not make a demand for payment of costs, fees, and expenses. Indeed, a demand could not have been made at that time because no costs, fees, and expenses had yet been incurred. Thus, the default letter could only have noted that Montgomery Park was *reserving* the right to pursue costs, fees, and

6

expenses *in the future* — after they would have been incurred and demand would have been made.

While the record does not contain any demand from Montgomery Park for costs, fees, and expenses made before the litigation was commenced, Montgomery Park did, in its answer and counterclaim, request "all reasonable costs, fees and expenses incurred by [Montgomery Park] in pursuit of its remedies hereunder including but not limited to attorneys' fees and court costs." (Alteration in original). Even so, this request was still prospective, as the litigation in pursuit of remedies had just begun. The first demand for payment that included costs, fees, and expenses actually incurred was made by Montgomery Park on August 24, 2022, when it filed and served its motion for costs, fees, and expenses, in accordance with the district court's schedule. We conclude that this motion indeed satisfied the requirement of "demand" in the lease and that demand had not been made before then.

NCO nonetheless contends that the lease makes "demand" a term of art and requires that any "demand," to be a valid notice under Section 16.01 of the lease, must be transmitted to NCO's address at the leased premises that it vacated. But NCO has continuously been a party to this litigation, and Montgomery Park's August 24 motion was served on it, as required by the applicable rules of procedure, thus providing it with adequate notice.

Because demand was not made until August 24, 2022, however, default interest on the amount demanded could not begin to run until then. As the lease provides, the costs, fees, and expenses were "payable immediately *upon demand*" and "*shall bear interest* at

7

the Default Rate until paid." (Emphasis added). We conclude, accordingly, that interest on costs, fees, and expenses runs from August 24, 2022, when demand was first made.

We therefore vacate the district court's award of interest in the amount of roughly $1.6 million plus ongoing interest and remand to allow the district court to recalculate that portion of the judgment and then to enter a revised judgment.

## III

NCO next contends that, in any event, the district court's award for costs, fees, and expenses should be reduced to exclude those incurred by Montgomery Park *in defending against* NCO's complaint filed in February 2011. In that complaint, NCO alleged that Montgomery Park breached the lease by overcharging for rent, unjustly enriched itself, and committed fraud. NCO argues that Montgomery Park's costs, fees, and expenses incurred *in defending against* these claims were not those "in pursuit of its remedies," as provided in Section 14.04 of the lease. Not until May 25, 2012, when Montgomery Park filed its counterclaim for past due rent, did Montgomery Park start to incur costs, fees, and expenses *in pursuit of* its remedies. And NCO maintains that even after May 25, 2012, Montgomery Park continued to incur costs, fees, and expenses *in defending against* NCO's claims — while also incurring costs, fees, and expenses *in pursuing* its counterclaim. It claims that this situation continued until November 29, 2016, when we issued our opinion in *NCO Financial Systems, Inc. v. Montgomery Park, LLC*, 842 F.3d 816 (4th Cir. 2016).

As a general proposition, NCO's argument is well taken, as it was contractually responsible for only costs, fees, and expenses incurred by Montgomery Park *in pursuit of*

*remedies*, not those incurred by Montgomery Park in defending itself from NCO's claims. But, in this case, Montgomery Park's defense against NCO's claims and its pursuit of its own remedies were two sides of the same coin.

In its complaint, NCO contended that the square footage for which Montgomery Park was charging rent was inaccurate and was misstated in the lease. And this alleged difference between the square footage provided in the lease and the actual square footage contributed to NCO's failure to satisfy the lease's conditions for early termination. Thus, NCO sought a declaratory judgment that it had properly terminated the lease early, based on the rent attributable to the property's actual square footage, as distinct from the square footage and rent stated in the lease. In its answer and counterclaim, Montgomery Park disputed these claims, alleging that NCO was bound by the lease as written and that it had defaulted in the payment of rent, giving rise to Montgomery Park's counterclaim for past due rent.

In these circumstances, the "common core of facts" doctrine justifies Montgomery Park's claim for fees incurred both in defending against NCO's claims and in pursuing its own. As the Supreme Court has noted, in some "cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories," such that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Thus, the "lawsuit cannot be viewed as a series of discrete claims," and rather than attempting to so parse the case, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

9

reasonably expended on the litigation." *Id.* Maryland courts fully agree with these principles. *See Plank v. Cherneski*, 231 A.3d 436, 481 (Md. 2020); *Ochse v. Henry*, 88 A.3d 773, 785 (Md. Ct. Spec. App. 2014); *Weichert Co. of Maryland v. Faust*, 989 A.2d 1227, 1237–38 (Md. Ct. Spec. App. 2010), *aff'd*, 19 A.3d 393 (Md. 2011). Moreover, the Maryland courts point out that the doctrine "may be applied to both contractual and statutory fee-shifting." *Ochse*, 88 A.3d at 785. Finally, where there is a common core of facts, as in this case, courts have discretion to apply the doctrine, *see Weichert*, 989 A.2d at 1237, which recognizes the trial court's "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what are essentially factual matters," *Goodwin v. Metts*, 973 F.2d 378, 384 (4th Cir. 1992) (quoting *Hensley*, 461 U.S. at 437).

We conclude that, in the circumstances of this case, the district court did not abuse its discretion, and therefore we affirm the district court's award of costs, fees, and expenses incurred by Montgomery Park both in defending against NCO's claims and in pursuing its own counterclaims.

IV

Finally, NCO contends that the district court erred in including in its award the sum of $157,897.99 paid as fees to expert witnesses. It maintains that "under Maryland law, entitlement to reimbursement for expert witness fees is governed by the American Rule, which prohibits recovery for attorneys' fees in the absence of an express agreement between the parties or statutory or rule authority for such awards." (Citing *Bahena v. Foster*, 883 A.2d 218, 226 (Md. Ct. Spec. App. 2005)).

10

But in this case, the parties agreed in the lease to shift the costs, fees, and expenses that Montgomery Park incurred in pursuit of its remedies.  And just as Maryland law does not "require the phrase 'attorney's fees' in a contract to override the American Rule," *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 285 (Md. 2008), neither does it require the phrase "experts' fees."  By generally requiring NCO to pay "fees," "including but not limited to attorneys' fees," the lease clearly indicates that "fees" is not limited to attorneys fees but includes all fees incurred by Montgomery Park "in pursuit of its remedies."  Since expert fees were so incurred, we find no error in the district court's inclusion of them in its award.  *See U.S. Home Corp. v. Settlers Crossing, L.L.C.*, 833 F. App'x 374, 381 (4th Cir. 2020) (per curiam).

*    *    *

For the reasons given, we vacate the default interest portion of the district court's March 4, 2024 amended order of final judgment, instruct the court to recalculate the default interest as provided therein, and direct it to enter a revised judgment.  In all other respects, we affirm.

AFFIRMED IN PART,<br>
VACATED IN PART, AND<br>
REMANDED WITH INSTRUCTIONS